Kathy L. JOINER, etc., et al., Plaintiffs,

v.

DIAMOND M DRILLING CO. and Halliburton Company, Defendants and Third-Party Plaintiffs-Appellants,

v.

Dr. C. Babson FRESH, Third-Party Defendant-Appellee.

No. 80–3896.

United States Court of Appeals, Fifth Circuit.

June 7, 1982.

Rehearing and Rehearing En Banc Denied Sept. 16, 1982.

---

Joseph J. Weigand, Jr., Houma, La., for Diamond M Drilling Co.

Allen L. Smith, Jr., Jeff M. Cole, Lake Charles, La., for Halliburton Co.

Provosty, Sadler & De Launay, LeDoux R. Provosty, Jr., F. Rae Swent, Alexandria, La., for third-party defendant-appellee.

Before CLARK, Chief Judge, GOLDBERG and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

These appeals arise from the offshore injury and subsequent onshore death of a

seaman. Federal litigation in this case began when the seaman's widow brought two damage actions in district court; one suit was filed against the decedent's maritime employer and another claim was lodged against the manufacturer of allegedly defective shipboard equipment. Each of these "maritime" defendants in turn brought third-party claims for contribution and indemnity against a Louisiana physician whose alleged onshore medical malpractice was said to have ultimately caused the seaman's death.

The widow's claims against the shipowner and manufacturer were settled prior to trial; however the district court continued to exercise jurisdiction over the third-party claims. Upon a motion for summary judgment, the trial court dismissed these actions on their merits, finding as a matter of Louisiana state law that the physician could not be liable to the third-party plaintiffs. The shipowner and manufacturer then brought this appeal, arguing that the trial court erred in its application of Louisiana state law.

We conclude that the district court acted beyond the proper scope of its limited subject matter jurisdiction in adjudicating these third-party claims. Therefore, we do not reach the merits of this state-law controversy. Instead, we vacate the judgments entered below and remand these third-party actions with instructions that they be dismissed without prejudice for want of subject matter jurisdiction.

I. FACTS AND PROCEDURAL HISTORY

On August 25, 1977, Ronald S. Joiner was injured while working aboard the *New Era*,

an offshore drilling vessel owned and operated by the Diamond M Drilling Company ("Diamond M"). The seaman was hurt while attempting to clean a shipboard mud tank manufactured by the Halliburton Company ("Halliburton").

After the accident, the injured seaman was hospitalized and placed under the care and treatment of a private physician, Dr. C. Babson Fresh. Unfortunately, the patient's condition steadily deteriorated and on August 31, 1977, Ronald Joiner died.

On November 15, 1977, Joiner's widow [1] brought suit against the Diamond M Drilling Company, alleging that her husband's injury and subsequent death had been caused by the shipowner's negligence and by the unseaworthiness of the vessel it owned and operated. Diamond M in turn filed a third-party complaint against C. Babson Fresh, the doctor whose alleged onshore malpractice was said to have ultimately caused Joiner's death.

On June 22, 1979, Mrs. Joiner amended her complaint, adding Halliburton, the mud tank manufacturer, as a defendant. Then, on August 24, 1979, Mrs. Joiner settled her claim against both Diamond M and Halliburton.[2] Together, the two defendants paid $300,000 to Joiner's estate in exchange for a voluntary dismissal of the plaintiff's claims.

Unfortunately, the pretrial settlement failed to bring this litigation to an end. Diamond M's third-party action against Dr. Fresh remained before the court and Halliburton would soon file its own third-party claim against the physician.[3] Dr. Fresh responded to these third-party claims with a motion to dismiss. The district court took up the motion and granted summary judgment on the merits in favor of the third-party defendant.[4] Third-party plaintiffs

---

**1.** Mrs. Joiner brought suit in her capacity as administratrix of her late husband's estate.

**2.** The plaintiff never filed any claims against Dr. Fresh.

**3.** Diamond M filed its third-party action on October 20, 1978. Halliburton filed its own third-party claim on August 28, 1979. Each of the third-party plaintiffs alleged that Dr. Fresh's onshore medical malpractice caused

Joiner's death. Accordingly, each third-party plaintiff sought to recover contribution or indemnity "over and against" the physician.

**4.** In an opinion which appears at 500 F.Supp. 619 (W.D.La.1980), the trial court held that:

1. Louisiana state law would control the question of whether the third-party plaintiffs could recover contribution or indemnity from Dr. Fresh.

Diamond M and Halliburton then brought this appeal.

## II. SUBJECT MATTER JURISDICTION OVER THE THIRD–PARTY CLAIMS

Although these third-party claims were adjudicated "on-their-merits," the trial court failed to indicate the basis upon which it presumed to exercise subject matter jurisdiction. Thus, the task falls to this Court to determine whether these third-party claims properly come within the scope of the federal courts' limited jurisdiction.

The parties have suggested that there may be three possible bases for the exercise of federal subject matter jurisdiction over these third-party claims; admiralty, diversity, or ancillarity. We will consider each of these possible jurisdictional bases in turn.

### A. *Admiralty Jurisdiction Over the Third-Party Claims:*

■ An action for breach of a maritime contract is cognizable under the federal courts' admiralty jurisdiction.[5] In an effort to bring their claims within the ambit of federal admiralty jurisdiction, the appellants argue that their third-party actions against Dr. Fresh concern an alleged breach of a maritime contract and are therefore cognizable in federal court. Appellants suggest that a physician's treatment of an injured seaman creates an implied maritime contract between doctor and shipowner and that the physician's alleged malpractice constitutes a breach of that implied contract. Thus, appellants argue that their claims against Dr. Fresh can be seen as actions for breach of an implied warranty for workmanlike performance and therefore contend that their third-party complaints set forth "general maritime law" claims under the doctrine of maritime indemnity described in

*Ryan Stevedoring Company Inc. v. Pan Atlantic Steamship Corporation,* 350 U.S. 124, 132, 76 S.Ct. 232, 236, 100 L.Ed. 133 (1956).

We find that the appellants' *Ryan* indemnity argument is foreclosed by our decision in *Penn Tanker v. United States,* 409 F.2d 514, 517–518 (5th Cir. 1969). In *Penn Tanker, supra* a third-party plaintiff shipowner sought to recover *Ryan* indemnity from a hospital which had negligently treated an injured seaman. This court unequivocally rejected the shipowner's *Ryan* indemnity argument, stating:

> [T]here can be no implied warranty running from the [hospital] to the shipowner . . . We are unwilling to accept [the] tenuous argument that the relationship of . . . hospitals and shipowners, concerning treatment of seaman, is comparable to those relationships which have been held to justify the application of *Ryan.*

*Penn Tanker Company v. United States, supra,* 517–518.

We adhere to our decision in *Penn Tanker, supra.* A private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract. We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce. Rather, it has been consistently held that it is *state* law which controls in cases such as this. *See, e.g., United States Lines, Inc. v. U. S.,* 470 F.2d 487, 491 (5th Cir. 1972) (hospital located in Texas, Texas state law applied to shipowner's third-party claim against hospital); *Penn Tanker v. United States,* 409 F.2d 514, 519 at n.9 (5th Cir. 1969) (hospital located in Georgia, Georgia state law applied to shipowner's third-party claim against hospital);[6] *McCann v. Falgout Boat Co.,* 44

2. Under Louisiana law, the third-party plaintiffs were not entitled to contribution or indemnity.

3. Even if the third-party plaintiffs could have recovered contribution or indemnity from Dr. Fresh, their action was prescribed by Louisiana's one-year medical malpractice statute of limitations.

5. *See, Nacirema Operating Co. v. Johnson,* 396 U.S. 212, 216 at n.7, 90 S.Ct. 347, 350 at n.7, 24 L.Ed.2d 371 (1969) (". . . admiralty contract

jurisdiction extends over all contracts, wheresoever they may be made or executed . . . which relate to the navigation, business, or commerce, of the seas . . .").

6. In *Penn Tanker v. United States,* 409 F.2d 514 (5th Cir. 1969) and *United States Lines v. United States,* 470 F.2d 487 (5th Cir. 1972) this court did find subject matter jurisdiction to adjudicate third-party state-law claims brought by shipowners against onshore hospitals whose

F.R.D. 34 (S.D.Tex.1968) (shipowner's third-party claim against doctor arises under state law); *Accord, Wood v. Standard Products Co., Inc.*, 456 F.Supp. 1098, 1103 (E.D. Va.1978) (injured seaman's claim against onshore doctor does not arise under federal maritime law, but is a state-law claim pendent to an admiralty action).

These third-party claims against Dr. Fresh cannot be fairly characterized as being actions for breach of maritime contract, independently cognizable under the federal courts' admiralty jurisdiction. As the district court recognized, these are state law claims. If they are to be cognizable in federal court, it can only be under a theory of either diversity or ancillary jurisdiction.

### B. *Diversity Jurisdiction*

**1. Diamond M's Third-Party Claim:**

■ Diamond M's third-party complaint against Dr. Fresh included the following jurisdictional allegations:

"¶ 2: ... Diamond M is a foreign corporation authorized to do and doing business in the State of Louisiana ...

¶ 3: ... Jurisdiction is based on General Maritime Law, diversity of citizenship and ancillary jurisdiction ..."

On appeal, Diamond M has taken the position that these allegations were sufficient to confer federal diversity jurisdiction over their third-party claim. We cannot agree.

For the purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state in which it is incorporated and of the state where its principal place of business is located. 28 U.S.C. § 1332(c); *R. G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 654 (2nd Cir. 1979); *Canton v. Angelina Casualty Company*, 279 F.2d 553, 554 (5th Cir. 1960). In order to adequately establish diversity jurisdiction, a complaint must set forth with specificity a corporate party's state of incorporation *and* its principal place of business. Where the plaintiff fails to state the place of incorporation or the principal place of business of a corporate party, the pleadings are inadequate to establish diversity. *Walsh v. International Precious Metals Corp.*, 510 F.Supp. 867, 873 (D.Ut.1981); *Strout Realty v. Country 22 Real Estate Corp.*, 493 F.Supp. 997, 1000 (W.D.Mo.1980); *Holman v. Carpenter Technology Corp.*, 484 F.Supp. 406, 407–8 (E.D. Pa.1980).

We can find nothing in the pleadings to indicate where Diamond M is incorporated or where it makes its principal place of business. Thus, we must reject Diamond M's contention that these pleadings were sufficient to establish diversity.

**2. Halliburton's Third-Party Claim:**

■ Halliburton failed to make any jurisdictional allegations in its third-party complaint against Louisiana's Dr. Fresh. There was no allegation that Halliburton and Fresh were citizens of different states, nor can we find the requisite allegation that the amount in controversy exceeded $10,000. In fact, Halliburton has expressly denied that its citizenship was diverse with respect to a citizen of Louisiana.[7] Thus, this record clearly precludes a finding that Halliburton's claim against Dr. Fresh can be heard under the federal courts' diversity jurisdiction.

### C. *Ancillary Jurisdiction*

Even if these third-party actions are simply seen as state-law claims; and even if

---

treatment worsened the condition of injured seamen. However, *Penn Tanker, supra* and *United States Lines, supra* are clearly distinguishable from the matter at bar. In each of those cases, the third-party defendant was a United States Public Health Service hospital. Federal courts were able to adjudicate those third-party actions because the claims were against the United States government and jurisdiction was premised on the Federal Tort Claims Act.

7. In the plaintiff's original complaint against Halliburton, Joiner, a citizen of Louisiana, alleged that Halliburton was "a foreign corporation" and that there was diversity as between Joiner and Halliburton. In its answer to Joiner's complaint, Halliburton expressly denied that there was diversity and expressly denied that it was a "foreign corporation" with respect to the Louisiana plaintiff. If Halliburton is not a foreign corporation with respect to Joiner (a Louisiana citizen), neither can it be a foreign corporation with respect to Louisiana's Dr. Fresh.

diversity does not provide a basis for the exercise of subject matter jurisdiction over these state-law claims; the appellants have suggested that their actions against Dr. Fresh are cognizable in federal court insofar as they are *ancillary* to the main admiralty claims first brought by Mrs. Joiner. This argument raises two important questions: First, is the doctrine of ancillary jurisdiction applicable in the context of *admiralty* impleader? Second, should the federal court have retained its jurisdiction over the ancillary state-law claims when the main federal actions had been settled prior to trial? We will address each of these questions in turn.

### 1. Ancillary Jurisdiction Over Third Party Claims Appended to Admiralty Actions

"The law is far from settled [as to] whether ancillary jurisdiction can apply to an impleader in maritime suits." *Gauthier v. Crosby Marine Service, Inc.*, 87 F.R.D. 353, 355 (E.D.La.1980). Our district courts have divided over this question,[8] and until now, this court has not been presented with a case which clearly presented the issue.[9]

In two early district court opinions it was held that an admiralty defendant could not implead a third party unless it could be shown that there was an independent basis for the exercise of subject matter jurisdiction over the third-party claim.[10] However, those early decisions have been consistently criticised and rejected by both the courts [11] and commentators.[12]

We believe that the considerations of judicial economy which provide the principal justification for the exercise of ancillary jurisdiction in civil cases apply with equal force in the context of admiralty impleader.[13] Now that the rules of admiralty

---

**8.** *Compare, Gauthier v. Crosby Marine Service, Inc.*, 87 F.R.D. 353 (E.D.La.1980) (ancillary jurisdiction applicable in admiralty context) *with McCann v. Falgout Boat Company*, 44 F.R.D. 34 (S.D.Tex.1968) (ancillary jurisdiction *not* applicable in admiralty context).

**9.** This Court expressly recognized the problem in *Gypsum Carrier, Inc. v. Union Camp Corporation*, 489 F.2d 152, 154 (5th Cir. 1974). However, in *Gypsum Carrier* there was an independent basis for the exercise of federal subject matter jurisdiction over the third-party claim. Therefore, we did not reach the question of whether the doctrine of ancillary jurisdiction extended to admiralty as well as civil impleader. *Id.*, at 154.

**10.** *See, McCann v. Falgout Boat Co., supra; Stinson v. S. S. Kenneth McKay*, 360 F.Supp. 674 (S.D.Tex.1973). Under former admiralty Rule 56, a maritime defendant could not implead a third party unless it could be shown that there was an independent basis for the exercise of subject matter jurisdiction over the third-party claim. However, the rules of admiralty and civil procedure were merged in 1966. At that time, F.R.Civ.P. 14(c) supplanted Admiralty Rule 56. *McCann, supra* and *Stinson, supra* held that the jurisdictional limits imposed by Admiralty Rule 56 were also applicable to its successor, F.R.Civ.P. 14(c).

**11.** *See, e.g. Leather's Best Inc. v. Mormaclynx*, 451 F.2d 800, 810 n.12 (2nd Cir. 1971); *Gauthier v. Crosby Marine Services, supra* at 355; *Morse Electro Products Corporation v. S. S. Great Peace*, 437 F.Supp. 474, 483 (D.N.Y.

1977); *Fawcett v. Pacific Far East Lines*, 76 F.R.D. 519, 521 (N.D.Cal.1977); *Accord, Wood v. Standard Products Co., Inc.*, 456 F.Supp. 1098, 1103 (E.D.Va.1978); *Quam v. Mobil Oil Corp.*, 496 F.Supp. 986, 988 (S.D.N.Y.1978).

**12.** *See, e.g.* 3 Moore's Federal Practice ¶ 14.36, at p. 752 (1981–1982) ("... the same reasons which sustain the use of ancillary or pendent jurisdiction in civil cases ought now to be applied to admiralty cases."); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1645 at 349 (1971) "the denial of jurisdiction over the third-party complaint in *McCann* is undesirable."); A.L.I., *Study of the Division of Jurisdiction Between State and Federal Courts*, Official Draft, 1969, p. 228. ("... the doctrines of ancillary and pendent jurisdiction will permit ... impleader in any case in which the transaction or occurrence involved gives rise to both maritime and non-maritime claims. The decision to the contrary in *McCann* ... takes too restrictive a view ...") *See also*, Landen, *By Sleight of Rule: Admiralty Unification and Ancillary and Pendent Jurisdiction*, 51 Tex.L.Rev. 50, 63 n.55 (1972); Comment, Davidson, L., *Impleader of Nonmaritime Claims under Rule 14(c)*, 47 Tex.L.Rev. 120 (1968); Comment, *Admiralty Practice After Unification: Barnacles on the Procedural Hull*, 81 Yale L.J. 1154, 1176–1180 (1972).

**13.** As Judge Friendly stated in *Leather's Best, supra*, at 810, n.12, "... the doctrine of ancillary jurisdiction ... extend(s) to admiralty as well as civil impleader ... Certainly the prac-

and civil procedure have been merged, we see no statutory or constitutional impediment to the exercise of ancillary jurisdiction over state law claims appended to admiralty actions. Certainly the great weight of recent authority supports this view. *See, e.g., Leather's Best v. Mormaclynx, supra,* 810 at n.12; *Gauthier v. Crosby Marine Service, Inc., supra* at 355; *Morse Electro Products Corp. v. S. S. Great Peace, supra* at 483; *Fawcett v. Pacific Far East Lines, supra* at 521. Therefore, we hold that a third-party claim lacking independent grounds of jurisdiction may be appended to an admiralty action and is cognizable in federal court under the doctrine of ancillary jurisdiction so long as the ancillary claim arises out of the same core of operative facts as the main admiralty action.

2. Ancillary Jurisdiction When the Principal Claim Has Been Settled Prior to Trial:

We hold that the doctrine of ancillary jurisdiction is applicable in the contexts of both civil and admiralty impleader. How-

ever, this finding does not end our jurisdictional inquiry. In this case we must determine whether the district court erred in *continuing* to exercise jurisdiction over the ancillary state-law claims when the main federal actions had been settled prior to trial.[14]

■ Generally, when the primary federal claim has been settled or dismissed before trial, the district court should dismiss any lingering ancillary state law claims. *See, United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, the state claims should be dismissed as well.").[15] However, we recognize that "there will be instances in which retention of the third-party claim, even after the settlement of the main claim, may be appropriate." C. Wright & A. Miller, 6 *Federal Practice & Procedure* § 1444 at 53 (1982 supp.). Thus, our task is to determine whether this case presents one of those special instances where retention of linger-

---

tical considerations which support the doctrine of ancillary jurisdiction in the context of civil impleader are equally persuasive on the admiralty side."

**14.** For the purposes of this analysis, we have *assumed* that the district court acted properly in initially exercising ancillary jurisdiction over these third-party claims and now ask whether the trial court erred in continuing to exercise jurisdiction after the main federal actions had been settled. However, we should note that there is a serious question as to whether the trial court could have ever properly exercised ancillary jurisdiction over *Halliburton's* third-party claim.

Diamond M filed its claim against Dr. Fresh on October 20, 1978, however Halliburton did not file its third-party claim until August 28, 1979—four days *after* the settlement of the main actions. Thus, at the time Halliburton first filed its claim against Dr. Fresh, it was no longer a party to any live controversy pending in federal court. A district court may indeed be empowered to adjudicate ancillary state-law claims filed while related federal actions are properly pending in the federal forum. However, we do not think that the federal judicial power can be extended to embrace state-law claims lacking an independent jurisdictional basis which are first filed *after* all related federal claims have been settled or dismissed.

**15.** *See also, Putnam v. Williams,* 652 F.2d 497, 502 (5th Cir. 1981) (*dicta*). (". . . the preferred practice, when no extensive proceedings on the ancillary claim have begun in federal court, is to dismiss [the state-law claim] so that the case may be brought in state court where it belongs."); *McDonald v. Oliver,* 642 F.2d 169, 172 (5th Cir. 1981) (". . . the district court lost its ancillary jurisdiction when the underlying lawsuit was dismissed."); *Tinker v. DeMaria Porsche-Audi, Inc.,* 632 F.2d 520, 523 (5th Cir. 1980) ("[I]f the federal claims are dismissed before trial . . . the state claim should be dismissed as well."); *Federman v. Empire Fire and Marine Insurance Company,* 597 F.2d 798, 811 (2nd Cir. 1979) (settlement of main federal claim prior to trial necessitates dismissal of state law claims); *Propps v. Weihe, Black and Jeffries,* 582 F.2d 1354, 1356 (4th Cir. 1978) (district court acted properly in dismissing ancillary third-party claims when main federal action was settled prior to trial); *Rosario v. American Export-Isbrandsten Lines, Inc.,* 531 F.2d 1227, 1233 n.17 (3rd Cir. 1976) (*dicta*) (where seaman's claim against shipowner is settled prior to trial, ancillary state-law claim against hospital should also be dismissed); C. Wright & A. Miller, 6 *Federal Practice and Procedure* § 1444, at 237 (1971 ed.); Note, *Disposition of Third Party Claim When the Primary Claim Has Been Dismissed,* 23 S.Car.L. Rev. 261, 267 (1971).

ing ancillary state-law claims can be justified.

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that federal courts have the power to adjudicate state-law claims appended to federal actions.[16] However, the *Gibbs* Court specifically stated that when the main federal claim is dismissed *prior to trial*, an appended state claim "should be dismissed as well." *Id.* 383 U.S. 726, 86 S.Ct. 1139.[17]

While *Gibbs* suggests that dismissal of appended state law claims is mandatory whenever the main federal claim is dropped prior to trial, in practice district courts have been allowed a measure of discretion in determining whether to retain their ancillary jurisdiction over appended state claims.[18] However, this discretion is not unlimited.[19] To hold otherwise would be to insulate even the most improvident exercise of ancillary jurisdiction from any meaningful appellate review.

*Gibbs* and its progeny have enumerated several factors which must be considered whenever a federal court is asked to press against the outer limits of its jurisdiction and to adjudicate pendent or ancillary claims. *Gibbs* reminds us that judicial efficiency and economy is the *raison d'etre* of ancillary jurisdiction. If the interests of judicial economy are no longer advanced by the retention of ancillary claims, the state-law actions ought to be dismissed.[20]

*Gibbs* also tells us that federal courts must be ever mindful of the states' interest in the integrity and autonomous development of their own jurisprudence. "Needless decisions of state law should be avoided . . . as a matter of comity,"[21] and "[f]ederal courts should not be overeager to hold on to the determination of issues that might be more appropriately left to settlement in state court."[22] Thus, *Gibbs* teaches that federal courts must refrain from unnecessary poaching upon a sovereign state's jurisprudential turf.

---

**16.** In *Gibbs*, the Supreme Court addressed the question of pendent jurisdiction, while in this case we are concerned with the scope of ancillary jurisdiction. However, the Court's reasoning in *Gibbs* applies with equal force in defining the proper reach of both pendent and ancillary jurisdiction. Pendent and ancillary jurisdiction involve the "same generic problem: under what circumstances may a federal court hear and decide a state-law claim arising between . . ." non-diverse parties. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978). For examples of cases applying *Gibbs* in the ancillary jurisdiction context, *see*, *Putnam v. Williams*, 652 F.2d 497, 502 (5th Cir. 1981) (*dicta*); *McDonald v. Oliver*, 642 F.2d 169, 172 (5th Cir. 1981); *Ortiz v. United States*, 595 F.2d 65, 66 n.2 (1st Cir. 1979); *Propps v. Wiehe, Black & Jeffries*, 582 F.2d 1354, 1356 (4th Cir. 1978); *Rosario v. American Export-Isbrandsten Lines, Inc.*, 531 F.2d 1227, 1233 n.17 (3rd Cir. 1976) (*dicta*). *See also* C. Wright & A. Miller, 6 *Federal Practice & Procedure* § 1444 at 237 (1971 ed.).

**17.** *See*, Note, *Aldinger v. Howard and Pendent Jurisdiction*, 77 Col.L.Rev. 127, 135 n.40 (1977); C. Wright & A. Miller, 6 Federal Practice & Procedure § 1444 at 237 (1971 ed.).

**18.** *See, e.g., Rosado v. Wyman*, 397 U.S. 397, 403–405, 90 S.Ct. 1207, 1213–1214, 25 L.Ed.2d 442 (1970); *Rheaume v. Texas Department of Public Safety*, 666 F.2d 925, 932 (5th Cir. 1982).

**19.** *See, e.g. Federman v. Empire Fire and Marine Insurance Company*, 597 F.2d 798, 811 (2nd Cir. 1979); (district court retained and adjudicated state law claims; court of appeals reversed, holding that it was error to retain and adjudicate ancillary claim after settlement of main action). *Rosario v. American Export-Isbrandsten Lines, Inc.*, 531 F.2d 1227, 1233 n.17 (3rd Cir. 1976) (*dicta*) (district court retained and adjudicated state law claim; court of appeals reversed, noting that it was error to retain ancillary claim after settlement of main admiralty action).

**20.** *See generally*, Note, 23 S.Car.L.Rev. 261, 267 (1971). ("When the primary claim has been dismissed before trial, the general rule is to also dismiss the ancillary third party claim. The reason for this rule is that impleader is allowed only because of economy of time and costs in trying all issues in one trial and the avoidance of proving the same set of facts in two separate suits.")

**21.** *U.M.W. v. Gibbs, supra* 383 U.S. at 726, 86 S.Ct. at 1139.

**22.** *Id.*, 726 at n.15, 86 S.Ct. at 1139 n.15; *see also, Jones v. Fitch*, 665 F.2d 586, 593 (5th Cir. 1982) (District court properly refused to rule on appended state-law claim following dismissal of federal claim where state claims "involved substantial novel questions of state law.")

■ Where the main federal action has been settled prior to trial, considerations of judicial efficiency and economy can no longer justify the continued exercise of federal jurisdiction over ancillary state-law claims; and considerations of comity and federalism militate in favor of dismissal. However, we recognize that a federal court may retain and adjudicate ancillary state-law claims after a pretrial settlement of the main federal action if a dismissal would unduly prejudice the parties. For example, if the applicable statute of limitations has run during the pendency of the state claim in federal court, a dismissal might deprive the parties of *any* forum. In such a case, a federal court would be justified in retaining jurisdiction over the ancillary state-law claims.[23] Similarly, if litigation over the ancillary claims has proceeded apace and the parties have already prepared their case in reliance upon the availability of a federal forum, dismissal might not be required.[24] However, ". . . when no extensive proceedings on the ancillary claim have begun in federal court, the trial court should dismiss

the ancillary claims." *Putnam v. Williams*, 652 F.2d 497, 502 (5th Cir. 1981).[25]

■ Applying the "*Gibbs*" considerations to the facts of this case, we conclude that the district court erred in retaining and adjudicating the third-party actions against Dr. Fresh.[26] The principal admiralty action in this case was settled prior to trial. Without this admiralty claim serving as a jurisdictional anchor, the third-party actions became "Flying Dutchmen" adrift in jurisdictional limbo.

None of the factors which have been held to justify retention of ancillary state-law claims were present in this case. No efficiency or economy was achieved by retaining the ancillary claims, for once the primary admiralty actions were settled, there was no longer a need to consolidate related cases. The parties would not have been unduly prejudiced by a dismissal, for as of August 24, 1979—the date of the pretrial settlement—little if any activity had occurred with respect to the third-party claims. Finally, we note that no applicable statute of limitations had run while the actions were pending in federal court.[27]

23. *See, e.g. Rheaume v. Texas Department of Public Safety*, 666 F.2d 925, 932 (5th Cir. 1982); *Bowen v. Evanuk*, 423 F.Supp. 1341, 1345 (R.I. 1976).

24. *See, e.g., Penn Finance Corporation v. Chelsea Title v. McGinnis*, 371 F.Supp. 398, 399 at n.1 (E.D.Pa.1974); ("In light of the advanced state of this litigation, we found it necessary to retain jurisdiction of the ancillary claims."). *See also, Rosado v. Wyman, supra*, 397 U.S. at 403–405, 90 S.Ct. at 1213–1214 (trial court may retain jurisdiction over pendent state claim if "substantial time and energy [has already] been expended.").

25. *See also, Marquette National Bank v. First National Bank of Omaha*, 422 F.Supp. 1346, 1354 (D.Minn.1976) ("inappropriate to retain jurisdiction where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims.").

26. The Third Circuit reached this same conclusion in a case presenting facts strikingly similar to those now before us. In *Rosario v. American-Export Isbrandsten Lines, Inc.*, 531 F.2d 1227 (3rd Cir. 1976), the court was confronted with an action involving a seaman who had been injured at sea and subsequently became the victim of medical malpractice on shore. The seaman's admiralty claims against the

shipowner were settled prior to trial, but the district court retained and adjudicated the state-law claims against an onshore hospital. The Court of Appeals reversed, noting that if ". . . the claim against [the hospital was] within the ancillary jurisdiction of the federal courts, the exercise of the court's power under that doctrine [was] clearly . . . inappropriate . . . because by the time of trial the [seaman's] claim against [the shipowner] had been settled." 531 F.2d 1227, 1233 n.17 (*dicta*).

27. The district court held that Diamond M's action was prescribed by Louisiana's one year medical malpractice statute of limitations. On appeal, Diamond M has argued that the Louisiana medical malpractice statute is inapplicable and that they have ten years in which to file their claim for contribution or indemnity.

If the district court is correct, Diamond M's action was prescribed before it was ever filed in federal court. If Diamond M is correct, its action is not yet prescribed. Because we find that we have no jurisdiction to hear the merits of this controversy, we express no opinion as to which of these Louisiana limitations statutes is applicable in this case. We merely note that in either case, the applicable statute of limitations did not run *while* the third-party claims were pending in federal court.

We should also emphasize that the decision to retain jurisdiction over the ancillary claims in this case seems particularly improvident insofar as adjudication of these actions required the district court to address an array of especially complex and unsettled questions of Louisiana state law.[28] This constituted a wholly unnecessary incursion into the province of a coordinate judicial system.

### III. CONCLUSION

We find that these third-party claims were state-law actions and that they were not cognizable under either federal admiralty or diversity jurisdiction. Moreover, we conclude that while the district court may initially have been empowered to adjudicate these claims insofar as they were ancillary to a main federal action, it erred in *retaining* jurisdiction over these state-law claims after a pretrial settlement of the main federal actions.

Federal courts are empowered to adjudicate ancillary state-law claims which arise from the same core of operative facts as a pending federal claim. However, if the federal claim is dismissed *prior to trial*, there is a strong presumption in favor of dismissing any lingering ancillary state-law claims. While we are sensitive to the role of trial economy in our jurisprudence, we also remain devoted adherents to the principle of parsimony in the exercise of federal jurisdiction. Thus, we stand ready to interdict the improvident exercise of ancillary jurisdiction, especially in cases such as this where the unnecessary and unjustified adjudication of state-law claims involved the federal court in a complex and unsettled quadrant of Louisiana state law, excommunicating the state courts from their rightful place in our jurisprudential panoply.

Where the interests of judicial efficiency and economy will no longer be served by the continued exercise of ancillary jurisdiction; where proceedings of substance have not yet occurred; and where the adjudication of ancillary claims will require a federal court to decide novel and complex questions of state law; lingering ancillary claims should be dismissed. Therefore we conclude that the trial court erred in retaining and adjudicating these third-party claims.

Because the district court acted beyond the proper scope of its limited subject matter jurisdiction, its opinion and order are of no effect.[29] Accordingly, we must VACATE the judgments entered below and REMAND these third-party claims with instructions that they be dismissed without prejudice for want of subject matter jurisdiction.

---

**28.** In adjudicating these ancillary state-law claims, the district court held that Dr. Fresh and the third-party plaintiffs were not "*solidary obligors*" and that under Louisiana law, neither Halliburton nor Diamond M could recover contribution or indemnity from Dr. Fresh. We note that this area of Louisiana law currently appears to be in a state of flux. Several recent Louisiana Supreme Court decisions have substantially reworked the doctrine of "in solido" obligations, *see, e.g., Foster v. Hampton,* 381 So.2d 789 (La.1980); *Thomas v. W. W. Clarklift, Inc.,* 375 So.2d 375 (La.1979); *see also,* A. Johnson, *Solidarity: Once More With Feeling,* 41 La.L.Rev. 355 (1981); B. Schewe and M. Quinn, *Prescribing Solidarity: Contributing to the Indemnity Dilemma,* 41 La.L.Rev. 659 (1981). Without expressing any opinion as to the merits of this case, we do note that the district court was operating in a complex and unsettled quadrant of Louisiana jurisprudence.

**29.** Ordinarily, the decisions of a federal court on questions of state law have no formal binding *stare decisis* effect in the state courts. Nevertheless, we must recognize that published opinions dealing with unsettled questions of state law do carry a measure of persuasive authority. We therefore emphasize that insofar as the district court in this case acted beyond the proper reach of its subject matter jurisdiction, its opinion and order has no effect and all issues decided therein remain open and subject to whatever disposition the Louisiana state courts may deem appropriate.