Ted **FAIR,** H. Dale **Curry,** and Carrie Sturgis **Dalton,** Plaintiffs,

v.

**NCNB TEXAS NATIONAL BANK** and **Federal Deposit Insurance Corporation,** as **Receiver for First Republic- Bank Waco, N.A., Defendants.**

Civ. A. No. CA3–89–0820–D.

United States District Court, N.D. Texas, Dallas Division.

March 22, 1990.

---

Marshal W. Dooley of Dooley, Rucker, Maris & Foxman, Dallas, Tex., for plaintiffs Ted Fair, H. Dale Curry and Carrie Sturgis Dalton.

Brian J. Hurst of Jenkens & Gilchrist, Dallas, Tex., for defendants NCNB Texas Nat. Bank and FDIC, as Receiver for First RepublicBank Waco, N.A.

FITZWATER, District Judge:

This case presents questions concerning the applicability of the *D'Oench, Duhme*[1] doctrine to transactions in which a failed financial institution acts both as a lender for and seller of property.

**I**

The facts set out by the plaintiffs are as follows. In 1982 First RepublicBank Waco, N.A. ("First Republic") loaned money to Vector Development Company to develop a condominium project in College Station, Texas. First Republic hired an inspecting architect to ensure compliance with plan specifications. After completion of the development, Vector became unable to pay the debt and defaulted. First Republic acquired the property by foreclosure. Thereafter, a senior vice president of the bank contacted plaintiff H. Dale Curry ("Curry") to inquire whether Curry and his partners, plaintiffs Ted Fair ("Fair") and Carrie Sturgis Dalton ("Dal-

ton"), would be interested in purchasing the condominium project. The bank official represented that First Republic would make the partnership a good deal. Curry and the bank official drove by the property so that Curry could assess it, but Curry did not physically inspect the condominiums. Curry also reviewed the construction plans, which showed that the project had cedar siding, firewalls between each unit, and four-inch pipes for plumbing. The bank official told Curry that these plans represented the details of the construction.

Curry and his partners initially concluded they did not wish to purchase the condominium project. First Republic continued to urge the partnership to acquire the property, however, and promised to make them "a deal they could not turn down." Because the bank wanted to dispose of the property before year-end, the details of the transaction were hastily arranged. The parties did not enter a written contract for purchase and the plaintiffs neither inspected the property nor insisted on a title policy. Based on assurances of various bank officials that the project was constructed in accordance with the plans, the plaintiffs took title by warranty deed. After assuming possession and conducting an inspection, plaintiffs discovered that the project did not have cedar siding or firewalls and that the plumbing pipes measured less than four inches in diameter. These defects precluded the individual units from being sold as condominiums. The rental income they generated was insufficient to service the debt. In early July 1988 plaintiffs advised the bank by letter of the problems with the project. The letter was placed in the loan file. At that time First Republic recognized in various internal memoranda that it would likely foreclose on the property or take a deed in lieu of foreclosure within a few months.

Later in July 1988 the Comptroller of the Currency declared First Republic insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") receiver. The FDIC subsequently entered into a purchase and assumption agreement with NCNB

1. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

Texas National Bank, N.A. ("NCNB") in which NCNB acquired substantially all of First Republic's assets, including the notes involved in this transaction, and certain liabilities. In December 1988 plaintiffs filed an action against NCNB in Texas state court alleging violations of the Texas Deceptive Trade Practices—Consumer Protection Act in connection with the sale of the property. The FDIC intervened and removed the action to this court.[2] Plaintiffs now seek to add claims for fraud, breach of the duty of good faith and fair dealing, intentional and negligent misrepresentation, prima facie tort, breach of fiduciary duty, breach of contract, and vicarious liability for the failure of the supervising architect to detect non-conformity with the plans. Plaintiffs also seek exemplary damages and attorney's fees. The FDIC and NCNB contend the *D'Oench, Duhme* and federal common law holder in due course doctrines mandate summary judgment on all claims in the original action. They oppose on the same ground plaintiffs' motion for leave to amend their complaint. The FDIC and NCNB also argue that NCNB cannot be liable because the FDIC retained liability for the claims plaintiffs now assert.

## II

### A

■ The court agrees that, because the FDIC retained liability for claims made in connection with the loan transaction in question, NCNB cannot be liable to the plaintiffs.

As noted, following the FDIC's appointment as receiver for First Republic, the FDIC entered into a purchase and assumption agreement with NCNB. Section 2.1 of the agreement sets forth the liabilities expressly assumed by NCNB. Section 2.1(j) provides for the assumption of "liabilities arising from any claims or litigation brought by the Failed Bank as of Bank Closing against third parties and related to any asset of the Failed Bank purchased by the Assuming Bank...." All parties

agree that the claims asserted by the plaintiffs are "related to" the notes NCNB acquired. Plaintiffs urge that NCNB assumed liability for the claims because, prior to the closing of First Republic, plaintiffs had missed several payments on their notes and First Republic therefore had a claim against plaintiffs as of the bank closing. The court declines to adopt this reasoning.

Plaintiffs' argument would construe § 2.1(j) as providing for the assumption of two classes of liabilities: "liabilities arising from any claims ... as of Bank Closing against third parties ..." and "liabilities arising from ... litigation brought by the Failed Bank as of Bank Closing against third parties...." This is not a natural reading of the unambiguous language of the purchase and assumption agreement. This and other courts in this circuit have construed the same agreement to mean that NCNB assumed liability only for counterclaims raised in response to suits that the failed bank initiated prior to bank closing. *See, e.g., Royal Bank of Canada v. FDIC*, No. CA4-84-0161-D, slip op. at 4–5 (N.D.Tex. Dec. 11, 1989); *Property Asset Equity Corp. v. NCNB Tex. Nat'l Bank*, No. S-89-7-CA, slip op. at 7 (E.D.Tex. March 6, 1989). The instant litigation was not commenced by First Republic—the failed bank—but by plaintiffs. Moreover, it was not filed prior to bank closing. Hence, it fails to meet the requirements of § 2.1(j) in at least two respects.

### B

■ Assuming *arguendo* that NCNB is not exculpated from liability by virtue of the purchase and assumption agreement, the court turns to the question whether NCNB can be immunized under the *D'Oench, Duhme* rule of estoppel.

When this motion was briefed and orally argued, this issue required the court to decide as a threshold matter whether *D'Oench, Duhme* applied in its common law form to a party other than the FDIC itself. This question has now been resolved by the Fifth Circuit in favor of extending the benefits of the doctrine to

---

**2.** The court denied plaintiffs' motion to strike the FDIC's intervention on September 29, 1989.

NCNB. *See Bell & Murphy and Assocs., Inc. v. InterFirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir.1990) ("[W]e agree with the FDIC that failure to extend *D'Oench, Duhme's* protection to bridge banks would undermine the effectiveness of bridge banks as a means of continuing the normal banking operations, and thereby protecting the depositors and creditors, of a failed bank"). Accordingly, NCNB may rely upon the *D'Oench, Duhme* rule of estoppel in the present case.

## C

The question for decision therefore becomes whether, as a matter of law based upon the undisputed material facts, *D'Oench, Duhme* precludes plaintiffs' claims against NCNB and the FDIC.[3]

 The *D'Oench, Duhme* doctrine is essentially a rule of estoppel. *D'Oench, Duhme,* 315 U.S. at 475, 62 S.Ct. at 688 (Jackson, J., concurring); *FDIC v. McClanahan,* 795 F.2d 512, 515 (5th Cir.1986) (referring to *D'Oench, Duhme* doctrine as a rule of estoppel). It prevents those who give notes to federally insured institutions from raising defenses based on side agreements made with officers of failed institutions regarding the enforceability of promissory notes. The doctrine encourages debtors to memorialize all agreements in writing and reflects the equitable principle that losses incurred as a result of unrecorded arrangements should not fall on deposit insurers, depositors, or creditors but rather upon the person who could have best avoided the loss. *McClanahan,* 795 F.2d at 516 (defendant "rather than the FDIC or the innocent depositors or creditors of the failed bank" should bear loss); *cf. Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355, 363 n. 16 (5th Cir. Unit B 1981) (borrowers could have protected themselves from loss by complying with 12 U.S.C. § 1823(e)), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). The *D'Oench, Duhme* doctrine bars affirmative claims as well as defenses. *Beighley v. FDIC,* 868 F.2d 776, 783–84 (5th Cir.1989).

 *D'Oench, Duhme* does not, however, preclude a maker from interposing all defenses to a regulator's attempt to collect on a note. *McClanahan,* 795 F.2d at 515. "The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect." *D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 680. In applying this standard "it would be sufficient ... that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled." *Id.; see also Beighley,* 868 F.2d at 784 (same); *FSLIC v. Murray,* 853 F.2d 1251, 1255 (5th Cir.1988) (by signing blank loan documents which were later altered borrowers lent themselves to a scheme likely to mislead bank examiners); *McClanahan,* 795 F.2d at 516 (failure to recover signed promissory note after loan was refused amounted to conduct likely to mislead bank examiners).

### 1

 Plaintiffs first argue that *D'Oench, Duhme* is inapplicable to this case because the claims they assert are against First Republic as the seller of the property rather than as lender for the transaction. According to plaintiffs, First Republic made false representations to induce the sale of the condominiums rather than to induce the execution of a promissory note. The court rejects this distinction as inconsistent with Fifth Circuit precedent.

*FDIC v. Texarkana Nat'l Bank,* 874 F.2d 264 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990), makes pellucid that the *D'Oench, Duhme* rule is applicable regardless whether a failed institution intends by its conduct primarily to induce execution of a note or to incline participation in some other venture. In *Texarkana National Bank* the FDIC, as receiver for an insolvent bank, sought recovery on two certificates of deposit purchased by the insolvent bank from Texarkana National Bank ("TNB"). TNB

---

3. It is undisputed that the FDIC is entitled to rely upon any available *D'Oench, Duhme* relief and that the FDIC can be liable for claims properly assertable by plaintiffs.

refused to pay the certificates of deposit to the FDIC, asserting *inter alia* that TNB was entitled to a set off. According to TNB, the failed institution had induced TNB to purchase a participation in a note held by the failed bank by making fraudulent representations about the note. The Fifth Circuit held the set off to be barred by *D'Oench, Duhme* and 12 U.S.C. § 1823(e). *Id.* at 268. The court observed that, by failing to get the representations about the note in writing, TNB participated in an arrangement likely to mislead the FDIC. *Id.* Thus although the facts did not fall within the pattern of earlier-decided *D'Oench, Duhme* cases, the court concluded TNB could not recover.

Similarly, in *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266 (5th Cir.1989), a thrift that had purchased a participation interest in a series of loans brought suit against the original lender, alleging the lender misrepresented certain facts in connection with the participation agreement. The thrift obtained a judgment for rescission of its interest based on fraud. *Id.* at 269. During the pendency of the appeal the FSLIC was appointed conservator of the lending institution and argued that *D'Oench, Duhme* afforded it a complete defense to the unrecorded misrepresentations. *Id.* at 270, 274. The circuit court held *D'Oench, Duhme* inapplicable because the participation agreement had been voided by the entry of judgment for rescission prior to the time the FSLIC was appointed conservator. Therefore the "FSLIC acquired no right, title or interest that could be diminished or defeated by the misrepresentations." *Id.* at 275. *Olney* is

instructive in the present case, however, because the court noted in *dictum* that "the misrepresentations [fell] within the *D'Oench* definition of 'secret agreement.'" *Id.*

In *Bell & Murphy* the Fifth Circuit settled the issue beyond doubt. There the FDIC, as receiver for an insolvent bank, moved to dismiss fraudulent inducement and breach of contract claims brought against it by a corporate borrower. 894 F.2d at 752. The borrower asserted that dismissal was improper because the *D'Oench, Duhme* rule did not apply to claims or defenses based upon unrecorded side agreements that did not defeat the FDIC's interest in a specific asset acquired from a bank. The Fifth Circuit found this argument "meritless," reasoning that "the *D'Oench, Duhme* rule bars affirmative claims based upon unrecorded agreements...." *Id.* at 753 (citing *Beighley*, 868 F.2d at 784). The court concluded that an agreement not discoverable by bank examiners is not enforceable against the FDIC. *Id.*[4]

■ The court is persuaded that the *D'Oench, Duhme* estoppel rule applies even if First Republic's primary motive was to sell condominiums rather than to induce plaintiffs to borrow money. The Fifth Circuit teaches that the form a transaction takes does not control the applicability of *D'Oench, Duhme*. Rather, the dispositive determination is whether a borrower lent himself to a scheme or arrangement whereby banking authorities were likely to be misled. *Bell & Murphy*, 894 F.2d at 753–54; *Beighley*, 868 F.2d at 784. A borrower's failure to get representations

---

4. The Fifth Circuit's decision in *FDIC v. Langley*, 792 F.2d 541 (5th Cir.1986), *aff'd*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), which was based upon an application of 12 U.S.C. § 1823(e), is also instructive. *Langley* involved the purchase of a farm, the owners of which were in default on their loans from Planters Trust & Savings Bank. *Id.* at 542–43. In an effort to "extricate Planters from these defaulted loans" the president of Planters arranged financing for new buyers of the property. *Id.* at 543. In the process, the president made several false representations about the acreage of, and the state of title to, the property. *Id.* The buyers/borrowers attempted to assert this ground as a basis for avoiding their obligations on the loan. The Fifth Circuit concluded that allowing the buyers/borrowers to assert the misrepresentations regarding the property as defenses to payment on the note "would create an unacceptable 'end run around § 1823(e).'" *Id.* at 546 (citing *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 146 n. 13 (5th Cir. Unit B 1981)). *Langley* stands for the proposition—contrary to plaintiffs' contentions—that the *D'Oench, Duhme* doctrine is not narrowly cabined to cases in which a lending institution fails to honor commitments made to induce the making of a note.

about the nature of property in writing, *Langley v. FDIC,* 484 U.S. 86, 94, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987); *Texarkana Nat'l Bank,* 874 F.2d at 268, or to ensure that a bank places the writing in its records, *see Bell & Murphy,* 894 F.2d at 754, amounts to participation in an arrangement likely to mislead the FDIC. Thus to the extent that misrepresentations made about the property are not in writing and properly placed in a bank's records, any claims arising from the misrepresentations are barred.

2

■ Plaintiffs also contend the misleading information about the property in question is set forth in a writing contained in the loan file. This is so, according to the plaintiffs, because the appraisal and construction specifications upon which they relied are included among the file documents. The court disagrees.

Under *D'Oench, Duhme* agreements "not clearly evidenced in the bank's records" and not "apparent to bank examiners" cannot be raised as affirmative claims against the FDIC acting as receiver for a failed institution. *Bell & Murphy,* 894 F.2d at 754 (agreement not contained in bank's records); *Beighley,* 868 F.2d at 783–84 (plaintiff produced 71 documents which purportedly reflected bank's agreement to finance creditworthy buyer to purchase certain property; because agreement was "not clearly evidenced in the bank's records, and would not be apparent to bank examiners," circuit court declined to find agreement sufficient to overcome *D'Oench, Duhme*). Applying an objective standard, the court concludes, as a matter of law, that the mere presence in a loan file of an appraisal and construction specifications would not lead a reasonably prudent bank examiner to conclude that the bank had warranted that the project was valued as appraised or constructed in accordance with the specifications, or that the bank

had agreed to bear the risk that the project did not meet the construction specifications.

The *D'Oench, Duhme* doctrine allows bank examiners to rely on an institution's records to determine the value of the bank's assets. Examiners cannot confidently determine an institution's net worth if the pertinent records contain putatively unqualified notes burdened by unrecorded warranties. *Cf. Langley,* 484 U.S. at 91, 108 S.Ct. at 401. Thus plaintiffs' claims in both the original and proposed amended complaint are barred because they are not based on representations or agreements apparent from the face of records contained in the bank's files.

The court therefore grants NCNB and the FDIC's motion for summary judgment.

III

■ The court next considers plaintiffs' motion for leave to amend their complaint. As to the claims proposed to be added against the FDIC and NCNB, granting leave to amend would be futile because *D'Oench, Duhme* bars the claims. The court is not required to grant leave to amend where amending would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The court does grant leave to amend the complaint to add James L. Marshall Associates ("Marshall Associates") and James L. Marshall ("Marshall") as parties. These claims are not barred by any doctrine now known to the court.

■ The court must nevertheless determine whether it would be appropriate to exercise its ancillary jurisdiction to consider NCNB's counterclaim and pendent party jurisdiction to hear plaintiffs' newly-asserted claims against Marshall Associates and Marshall.[5] *See Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1041 (5th Cir. 1982) (ancillary jurisdiction); *Miller v. Griffin–Alexander Drilling Co.,* 873 F.2d

---

5. The basis for jurisdiction over NCNB's counterclaim is ancillary jurisdiction. It appears the only basis for asserting jurisdiction over the claims against Marshall Associates and Marshall is pendent party jurisdiction, because neither party would otherwise be amenable to suit in federal court on the state law claims asserted. *See Feigler v. Tidex, Inc.,* 826 F.2d 1435, 1438 (5th Cir.1987).

809, 814 (5th Cir.1989) (pendent party jurisdiction); *Feigler v. Tidex, Inc.*, 826 F.2d 1435, 1438 (5th Cir.1987) (same).

▆▆ The Fifth Circuit has identified a number of factors a court should consider in determining whether to exercise ancillary or pendent party jurisdiction. These include: the factual relationships among the remaining claims and those for which federal jurisdiction originally existed, judicial economy, convenience, comity, federalism, and the plaintiff's ability to litigate his federal claim within a consolidated state court action. *Henry v. Independent Am. Sav. Ass'n*, 857 F.2d 995, 999 (5th Cir.1988) (citing *Boudreaux v. Puckett*, 611 F.2d 1028, 1031 (5th Cir.1980)); *Joiner*, 677 F.2d at 1042–43. Having considered these factors, the court concludes it should not exercise such jurisdiction in this case.

The claims plaintiffs seek to prosecute against Marshall Associates and Marshall are factually related to the theories of recovery plaintiffs asserted against NCNB and the FDIC. The justification for exercising jurisdiction, however, is not strong in the present case. The court has already concluded that NCNB and the FDIC are not liable to plaintiffs. Having granted summary judgment, and having declined to permit plaintiffs to amend their complaint against NCNB and the FDIC, the court has now resolved on the merits all the federal issues in the case; only state law claims remain. Because Marshall and Marshall Associates are added as parties only today, the court has gained no greater familiarity with the causes of action against these parties than would be possessed by a state court. The court likewise has taken no action on NCNB's counterclaim, which is grounded upon state law alone.[6] The interests of judicial economy and convenience are not served by the court's exercising jurisdiction over these claims. Given the attenuated connection between the theories

asserted and any federal interest, the interests of comity and federalism are best served by allowing the causes of action against Marshall and Marshall Associates and NCNB's counterclaim to be adjudicated in state court.

For the reasons set forth above, the court grants NCNB and the FDIC's motion for summary judgment, grants in part plaintiffs' motion for leave, and remands the balance of this case to the 160th Judicial District Court of Dallas County, Texas. The court has filed a judgment and order of remand today.

SO ORDERED.

---

6. It is arguable that NCNB will be required to raise the *D'Oench, Duhme* or federal common law holder in due course doctrines as rejoinders to plaintiffs' defenses against the note. This possibility does not make the case one that arises under federal law. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (defense that raises federal question inadequate to confer federal jurisdiction); *Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 542 (5th Cir.1990) (case arises under federal law only if reference to federal law is a necessary element of plaintiff's own case unaided by anything alleged in anticipation of avoiding defenses). Thus NCNB has no independent basis for pursuing its claim on the note in federal court.