**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 01-31291**
_____


**PHILIP J. RAMON III,**

**Plaintiff-Appellant,**


**VERSUS**


 **HARRY LEE, INDIVIDUALLY, AND IN THE CAPACITY OF THE SHERIFF FOR THE PARISH OF JEFFERSON, STATE OF LOUISIANA; RICHARD RODRIGUE, INDIVIDUALLY, AND IN THE CAPACITY OF  A DEPUTY SHERIFF FOR THE PARISH OF JEFFERSON, STATE OF LOUISIANA; AND THOMAS GORMAN, INDIVIDUALLY, AND IN THE CAPACITY OF  A DEPUTY SHERIFF FOR THE PARISH OF JEFFERSON, STATE OF LOUISIANA,**

**Defendants-Appellees.**


_____

**Appeal from the United States District Court**
**For the Eastern District of Louisiana**
_____
**August 29, 2002**



Before DAVIS, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:


I.      <u>BACKGROUND</u>

     The plaintiff, Philip Ramon, was an officer with the Jefferson

Parish Sheriff's Office (JPSO) from 1987 until Defendant Sheriff Harry Lee discharged him in November of 1999. On July 19, 2000, Ramon sued Lee, along with Richard Rodrigue and Thomas Gorman (two other high-ranking JPSO officials). Ramon alleged that his termination was illegal because it constituted retaliatory discharge for the exercise of his right to free speech under the First Amendment. He also pleaded defamation and intentional infliction of emotional distress. The District Court granted the Defendants' motion for summary judgment on Ramon's constitutional claim. Specifically, the court concluded that "the plaintiff has not met his burden of demonstrating that his speech, and not his own misconduct, was the motivating factor for his termination." Because this was Ramon's only federal claim, the District Court also dismissed his state law claims. *See Joiner v. Diamond M. Drilling Co.*, 677 F.2d 1035, 1041 (5th Cir. 1982)("Generally, when the primary federal claim has been settled or dismissed before trial, the district court should dismiss any lingering ancillary state law claims." Ramon appeals here. We affirm the District Court's judgment.

## II. <u>FACTS</u>

The entire dispute here centers around one of Ramon's supervisor's, Lieutenant Susan Rushing, destroying *Brady*[1] evidence

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963).

relevant to a serial murderer investigation. Rushing and Ramon both served on a Task Force that was created by the Federal Bureau of Investigation (FBI) to investigate a series of murders.[2] After some investigation, the Task Force identified Russell Ellwood as a suspect in the crimes. In August and September of 1997, members of the Task Force created a computerized time-line containing information about Ellwood's whereabouts at various times. The information was obtained from evidence seized through the execution of a search warrant. One day, Mary Dunn, a JPSO secretary assigned to the Task Force Office, was reviewing the information being entered into the time-line in the presence of Rushing, Ramon, and another officer, Detective Usey. Ms. Dunn began reading aloud from a piece of paper that she identified as a gasoline receipt and commented: "Texas, February 1993. How could he be in Texas and be here?"[3] Rushing took the receipt from her, tore it up, and threw it in the trash. After witnessing this event, Ramon registered his displeasure by leaving the room. However, he did not confront Rushing or take steps to recover the evidence from the trash can.

III. **APPLICABLE LAW**

---

[2] The Task Force was comprised of representatives of the law enforcement agencies of the Parishes of Jefferson, St. Charles, St. John the Baptist, and Tangiphoa, the Cities of New Orleans and Gretna, and the FBI.

[3] This date was significant because two victims had been discovered in Louisiana in the same month that the receipt indicated Ellwood was in Texas.

3

The parties agree as to the elements of Ramon's claim. In *Harris v. Victoria Independent School District*, this Court explained:

> The Plaintiffs must satisfy four elements to recover for a First Amendment retaliation claim. First the Plaintiffs must suffer an adverse employment decision. Second, the Plaintiffs' speech must involve a matter of public concern. Third, the Plaintiffs' interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency. *Fourth, the Plaintiffs' speech must have motivated the Defendants' action.*

168 F.3d 216, 220 (5th Cir. 1999) (emphasis added) (citations omitted). The District Court in this case noted that only this fourth prong was at issue. Under this prong, once a plaintiff shows that his conduct was constitutionally protected and that this conduct was a "motivating factor" in his or her discharge, the burden then shifts to the employer, which must demonstrate "that it would have reached the same decision . . . even in the absence of the protected conduct." *Mount Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

This Court reviews summary judgments *de novo*, employing the same standards as did the District Court. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to summary judgment as a matter of law. *See* FED. R. CIV. P. 56©); *Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

## IV.   **THE PARTIES' CONTENTIONS**

Ramon asserts that he was discharged for exercising his right to free speech.  Specifically, he claims that his complaint about Rushing's behavior was the "motivating factor" for his discharge.

In contrast, the Defendants contend that Ramon was fired—*not* for exercising his right of free speech—but rather for keeping silent.  The Defendants assert that Ramon's conduct in watching a colleague destroy exculpatory evidence regarding a suspected serial killer without taking steps to recover the evidence or report the incident was the cause of his discharge.

In response, Ramon argues that Ms. Dunn, who is covered by the same JPSO Code of Conduct, also witnessed the destruction of the evidence, but she was not disciplined for failing to preserve the evidence or report Rushing's conduct.  According to Ramon, this evidence rebuts the Defendants' claim that he was terminated for remaining silent about Rushing's conduct.

## V.   **THE DISTRICT COURT'S DECISION**

Ramon testified about the destruction of the gas receipt at a suppression hearing in the Ellwood case.  The District Court's order here demonstrates that it relied upon Ramon's statements during this hearing to conclude that summary judgment was proper.

5

The relevant portion of the court's order states:

> Defendants' version of events is supported by plaintiff's own testimony in the Ellwood hearing. Plaintiff admitted that he believed Lt. Rushing's acts in destroying the gas receipt to have been criminal. Moreover, plaintiff's own conduct in failing to retrieve or preserve the evidence can be characterized as possibly obstructing justice. Without ever having to reach the issue as to whether, and to whom, plaintiff revealed Lt. Rushing's misconduct, plaintiff's own undisputed conduct provided a proper basis for his dismissal from the JPSO. Thus, the Court finds that the plaintiff has not met his burden of demonstrating that his speech, and not his own misconduct, was the motivating factor for his termination.

The court also rejected Ramon's argument that the JPSO's refusal to fire other people over their failure to report Rushing's conduct demonstrated that his failure to report the conduct could not have been the reason for his discharge. The court pointed out that most of these individuals were not similarly situated to Ramon in that they were not present when the evidence was destroyed and they were not in a position, as he was, to retrieve or preserve the evidence. In addition, the court noted that Dunn, the other person present during the incident, was a secretary—*not* a law enforcement official. Hence, she was not under a similar duty to preserve the evidence. Accordingly, the district court concluded that summary judgment was proper.

## VI. CONCLUSION

Having reviewed the summary judgment evidence that was before the district court, including the transcripts of Ramon's testimony

at the Ellwood hearing, we conclude that the district court's analysis is correct.  Because Ramon has not carried his burden of demonstrating that speech, rather than his own misconduct, was the motivating factor leading to his discharge, summary judgment was proper.  Accordingly, we AFFIRM the district court's judgment.