JARROLL COAL CO., Inc.

v.

LEWIS et al.

No. 6710.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1954.

Decided Feb. 13, 1954.

W. Hayes Pettry, Charleston, W. Va., for appellant.

Hillis Townsend and M. E. Boiarsky, Charleston, W. Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a judgment in a proceeding instituted by a United States Marshal to have the court below determine conflicting claims to property upon which he had levied execution. The execution was issued for the collection of a judgment in the sum of $11,176.07 rendered by the court below in favor of the trustees of the United Mine Workers Welfare and Retirement Fund and against the Jarroll Coal Company. It had been levied upon the coal mining equipment and other personal property of the coal company. This property was claimed by E. L. Jarroll, Sr., who intervened in the proceeding and filed an answer with the coal company alleging that the property levied upon had been conveyed by the coal company by a chattel deed of trust as security for a note which it owed him and had been purchased by him at a sale conducted by the trustee. From a judgment in favor of the execution creditors, holding the note and chattel deed of trust void as against them because violative of the West Virginia statute, Code of 1949, § 3051(31-1-39), forbidding a corporation to use its funds to purchase its own stock, where this results in an impairment of capital, the coal company has appealed.

The judgment of $11,176.07 was rendered in favor of the trustees and against the coal company on a contract of March 1, 1949, renewed March 5, 1950, under which the company agreed to pay into the Welfare and Retirement Fund a certain amount per ton on coal mined by the company. The amount due under this contract was paid through July 1949; and the judgment rendered represented the amount due thereunder for coal mined between July 1949 and February 28, 1951.

On March 1, 1949, E. L. Jarroll, Sr. and the members of his family owned all the stock of the mining company. On that day he entered into contracts with the company and with two attorneys Thornhill and Clendenin, by the terms of which the company purchased all of the stock from him, paying him $4,000 in cash and giving him its note in the sum of $20,000 therefor. Thornhill and Clendenin agreed to act as officers of the company and to pay him $1,000 per month on the note, but nothing was paid on it by them. While there is testimony that the note was to be secured by chattel deed of trust on the personal property of the mining company, no such deed of trust was executed until two years later, after the indebtedness to the trustees had been incurred. The deed of trust was executed and acknowledged on March 1, 1951, but was admittedly backdated to March 1, 1949. It was not filed for record until September 28, 1951. The trustee's sale thereunder was advertised and held after the levy by the marshal. In March 1949, at the time of the execution of the note, the assets of the company, exclusive of good will, exceeded its liabilities, exclusive of the note, by less than $15,000. The trial judge found that the good will had no value and that the effect of the execution of the note was to impair the capital of the company within the meaning of the statute. There is nothing in the record which would justify us in not accepting these findings.

Upon these facts, the judgment of the trial court was clearly right.

What we have is the stockholders of a corporation causing it to buy their stock at a price rendering it insolvent and to secure the purchase price by an agreement to execute a deed of trust on all of its property, which was not executed until two years later and after indebtedness had been incurred which would be defeated by upholding the deed of trust. Under no law with which we are familiar is it possible to defeat the rights of creditors in such a way. Whether we look to the execution of the note or of the deed of trust securing it, we think that the attempt to secure an indebtedness incurred in the purchase of the corporation's stock, an indebtedness which not merely impaired its capital but rendered it insolvent, was necessarily void because violative of section 3051 of the West Virginia Code and that it constituted a fraud upon subsequent as well as existing creditors which gives them standing in court to attack the transaction.

The pertinent portion of section 3051 of the West Virginia Code of 1949 (31-1-39), which was taken from the general corporation law of the State of Delaware, is as follows:

"Every corporation organized under this chapter, or existing under the laws of this State, shall have the power to purchase, hold, sell and transfer shares of its own capital stock: Provided, that no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation: * * *."

■ Accepting, as we think we should, the finding of the trial judge that the good will of the company was without value, there can be no question but that payment of the $4,000 in cash and the execution of the $20,000 note on March 1, 1949, not only impaired the capital of the corporation but rendered it insolvent. Appellant contends that, even so, the trustees of the welfare and retirement fund were not creditors at that time and cannot complain of the transaction for that reason. It appears, however, that the contract under which the claim of the trustees arises was executed on the very day that the note was given and that the indebtedness had been incurred before the execution of the chattel deed of trust, two years later, transferring the assets of the corporation to secure the note. It was the transfer under this deed of trust which was relied upon to defeat the levy under the execution; and there can be no question but that such transfer, made at a time when the corporation was insolvent and made to secure stockholders for the purchase price of stock theretofore purchased from them, is void as to claims of creditors existing at the time it was made. Boggs v. Fleming, 4 Cir., 66 F.2d 859, 860. As said by this court in the case cited:

"While, in the absence of charter or statutory prohibition, it is well settled that a corporation may purchase its own stock, it can only do so provided the act is in good faith and without intent to injure its creditors. * * * The authorities are unanimous to the effect that, even though a corporation be solvent when it contracts to purchase its own stock, it may not later, upon insolvency, pay for it, until after the existing creditors have been paid * * *."

■ We think, also, that, even though the trustees be regarded as subsequent creditors, they are in position to attack the transaction here under consideration. It is a fraud on subsequent as well as upon existing creditors for the stockholders of a corporation to cause it to purchase their stock at a price rendering it insolvent, take an unrecorded lien upon all of its assets and allow it to continue doing business in its corporate name as if nothing had happened. Such creditors are unquestionably entitled to

treat as void, because in fraud of their rights, a transaction which in effect gives stockholders a secret lien on corporate assets. 13 Am.Jur. pp. 810–811; United Thacker Coal Co. v. Peytona Lumber Co., D.C., 15 F.Supp. 40; Atlanta & Walworth Butter & Cheese Ass'n v. Smith, 141 Wis. 377, 123 N.W. 106, 108, 32 L.R.A.,N.S., 137; 135 Am.St.Rep. 42. As said in the case last cited:

"A transaction, as in this case, where by treaty the corporation is at once changed from a solvent to an insolvent concern, to the manifest advantage of a stockholder over existing creditors, the parties concerned contemplating that it may and probably will incur other indebtedness, while having the semblance of solvency as before, should be regarded, as to all creditors prejudiced thereby, characterized by bad faith and so as not having the essential necessary to uphold it under the decisions of this court to which we have referred. In other words, a purchase by a corporation of its own stock, known by the parties to the transaction, or which ought to be known by them, to render it insolvent, is not a purchase in good faith as to existing creditors and not such as to future creditors if the parties to the transaction contemplate that the corporation will continue to do business and incur indebtedness, as before, on the faith of its previously supposed solvency continuing."

See also M. V. Moore & Co. v. Gilmore, 4 Cir., 216 F. 99; West Penn Chemical & Mfg. Co. v. Prentice, 3 Cir., 236 F. 891; Robinson v. Wangemann, 5 Cir., 75 F.2d 756; Botz v. Helvering, 8 Cir., 134 F.2d 538; Hall v. Henderson, 126 Ala. 449, 28 So. 531, 61 L.R.A. 621 and note, 85 Am.St.Rep. 53.

There was no error and the judgment appealed from will be affirmed.

Affirmed.