Opinion for the Court filed by
 

 Circuit Judge WALD.
 

 WALD, Circuit Judge:
 

 In 1977, appellee Washington Plate Glass Co., a D.C. corporation, repurchased the 50% stock interest held by appellant Edward Reiner. The company paid for the shares with a secured note for $350,000 payable over ten years, with interest at 6%. The company was solvent both before and after the repurchase and the transaction was not made in contemplation of bankruptcy.
 

 Washington Plate Glass made monthly payments on Reiner’s note until October 1980, when it ran into financial trouble. Shortly thereafter, the company became insolvent, and it was forced into bankruptcy in April 1981 by a petition from unsecured creditors. Reiner petitioned the bankruptcy court to collect some or all of the $222,-000 that Washington Plate Glass still owed him from the company’s remaining assets. The bankruptcy trustee opposed Reiner’s petition, arguing in the alternative that the repurchase violated D.C.Code § 29-305 (1981) (which governs a D.C. corporation’s power to purchase its own shares) and that a bankrupt corporation’s debt arising from repurchase of its own shares should be subordinated to the claims of other creditors.
 

 The bankruptcy court found that Washington Plate Glass was incorporated in 1953 and thus was governed by the 1901 D.C. Corporation Code,. D.C.Code §§ 29-101 to -240 (1981) rather than the 1954 D.C. Business Corporation Act, D.C.Code §§ 29-301 to -399.50 (1981) (of which § 29-305, on which the trustee relied, is a part). The court held that the 1901 Code gave Washington Plate Glass the power both to purchase its own stock in 1977 and to pay for that stock in 1981 even though insolvent. However, the bankruptcy court found it “manifestly unfair to the general unsecured creditors” to permit a former stockholder’s claim to take priority once the corporation
 
 *416
 
 goes bankrupt.
 
 [1]
 
 Applying the doctrine of equitable subordination,
 
 see
 
 11 U.S.C. § 510(c)(1), the court subordinated Reiner’s claim to those of other creditors. Reiner appealed to the district court, which affirmed the bankruptcy court’s decision.
 
 [2]
 

 Reiner now appeals to this court, claiming that: (1) the 1901 D.C. Corporation Code allows an insolvent corporation to pay for shares purchased when it was solvent; and (2) equitable subordination is not appropriate because the transaction was fair when made and the creditors were on constructive notice (under the U.C.C. filing system) of Reiner’s security interest. The bankruptcy trustee defends the bankruptcy court’s use of equitable subordination and also claims that the record does not show that Washington Plate Glass was incorporated prior to 1954.
 

 The parties have now disputed before three different courts whether Reiner has established that Washington Plate Glass was incorporated prior to the effec-five date of the 1954 D.C. Business Corporation Act. To lay the dispute to rest, we consulted the records of the District of Columbia Recorder of Deeds Office. Ten minutes of research showed that Washington Plate Glass was incorporated on August 19, 1953,
 
 but surrendered its prior charter and was reincorporated
 
 on December 6, 1976, under the 1954 Business Corporation Act.
 
 [3]
 
 We take judicial notice of this information and hold that the 1954 Act controls this case.
 
 [4]
 

 See
 
 Fed.R.Evid. 201(b) (“A judicially noticed fact must be ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.”).
 
 [5]
 

 It remains to consider whether § 29-305 permits Washington Plate Glass to pay for the shares it repurchased from Reiner.
 
 [6]
 
 That section provides:
 

 A corporation ... shall not purchase, either directly or indirectly, its own shares when its net assets are less than the sum
 
 *417
 
 of its stated capital, its paid-in surplus, any surplus arising from unrealized appreciation in value or revaluation of its assets and any surplus arising from surrender to the corporation of any of its shares, or when by so doing its net assets would be reduced below such sum.
 

 It is a factual question whether the 1977 repurchase violated § 29-305. We remand to the district court to remand to the bankruptcy court to make the necessary factual determination.
 
 [7]
 

 If Washington Plate Glass has no power to pay for repurchased shares, it should make no difference that Reiner has perfected a security interest in the corporation’s assets. The security interest falls with the underlying obligation. Any other result would permit evasion of the statutory rule restricting a corporation’s power to repurchase its own shares.
 
 Accord In re Flying Mailmen Service,
 
 539 F.2d 866, 870-72 (2d Cir.1976) (Friendly, J.);
 
 In re Bell Tone Records, Inc.,
 
 86 F.Supp. 806, 810 (D.N.J. 1949).
 
 [8]
 

 If the bankruptcy court decides that the repurchase was lawful in 1977, it will then need to consider whether § 29-305 nevertheless prohibits Washington Plate Glass from paying for those shares after it becomes insolvent. Section 29-305 does not expressly address that issue, there are no D.C. cases construing the section one way or the other, and we do not rule here on the proper interpretation. We note, however, that courts in a number of other jurisdictions have interpreted similarly phrased statutes to forbid an insolvent corporation from paying for repurchased shares.
 
 See, e.g., In re Trimble Co.,
 
 339 F.2d 838, 842-43 (3d Cir.1964) (Pennsylvania statute);
 
 Mountain State Steel Foundries v. Commissioner,
 
 284 F.2d 737, 742 (4th Cir.1960) (West Virginia statute);
 
 In re Flying Mailmen Service,
 
 539 F.2d 866, 869 (2d Cir.1976) (New York law).
 

 Only if the' bankruptcy court rules in Reiner’s favor on both of these issues will it need to consider the troublesome question whether equitable subordination of a former shareholder is appropriate even though local law permits the transaction and even though there was no fraud or overreaching. We do not decide that question here.
 

 
 *418
 
 The case is
 
 remanded
 
 to the district court with instructions to
 
 remand
 
 to the bankruptcy court to determine whether § 29-305 permits Washington Plate Glass to make further payments to Reiner.
 

 [1]
 

 .
 
 In re Washington Plate Glass Co.,
 
 No. 81-0235, mem. op. at 4 (Bankr.D.D.C. Apr. 28, 1982).
 

 [2]
 

 .
 
 Reiner v. Washington Plate Glass Co.,
 
 27 B.R. 550 (D.D.C.1983).
 

 [3]
 

 .
 
 See
 
 Washington Plate Glass Co. Certificate of Incorporation (Aug. 19, 1953); Washington Plate Glass Co. Certificate of Reincorporation (Dec. 6,1976) (both on file at District of Columbia Recorder of Deeds Office).
 

 [4]
 

 . We confess annoyance at the careless lawyer-ing that led the parties to argue at length, before three separate courts, not only this simply resolved issue but also other issues that are irrelevant if the 1954 Act controls this case. We order that each side bear its own costs on appeal.
 

 [5]
 

 . Under Fed.R.Evid. 201(e), “[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.” Any objection to the propriety of our taking notice of the publicly recorded date of reincorporation will be considered in the course of a petition for rehearing based thereon. Any challenge to the accuracy of the noticed information should be addressed to the bankruptcy court, to which we are remanding this case.
 

 [6]
 

 . We need not decide whether the bankruptcy court and the district court were correct in believing that Washington Plate Glass, if it had not been reincorporated in 1976, would have been governed by the 1901 Code rather than the 1954 Business Corporation Act.
 
 See
 
 Philip-son,
 
 A Review of the New Corporation Law of the District of Columbia,
 
 10 Bus.Law. 24, 28 (Jan.1955) (“the new law is ... not intended and does not purport to repeal the old corporation law”).
 

 We also do not decide whether the company, if not governed by § 29-305, could have paid for repurchased shares while insolvent. The 1901 Code neither permits nor forbids a corporation to repurchase its own shares. Thus, to determine whether a corporation may pay for repurchased shares even though insolvent at the time of payment, the lower courts should have looked to common law. See Act of Mar. 3, 1901, § 1, 31 Stat. 1189, 1189 (“The common law ... shall remain in force except in so far as ... inconsistent with ... this code.”). While there are no cases on point in this jurisdiction, the predominant common law rule was that an insolvent corporation had no power to pay for shares purchased when solvent. See e.g.,
 
 McConnell v. Estate of Butler,
 
 402 F.2d 362, 366 (9th Cir.1968);
 
 Robinson v. Wangemann,
 
 75 F.2d 756, 757-58 (5th Cir.1935);
 
 Boggs v. Fleming,
 
 66 F.2d 859, 860 (4th Cir.1933);
 
 Keith v. Kilmer,
 
 261 F. 733, 740 (1st Cir.1919),
 
 cert. denied,
 
 252 U.S. 578, 40 S.Ct. 344, 64 L.Ed. 725 (1920).
 

 [7]
 

 . A statement in the bankruptcy court’s opinion bears on this question.
 
 See In re Washington Plate Glass Co., supra
 
 note 1, at 4 (“There was [sic] clearly insufficient retained earnings in each of the calendar years 1977-80 with which to liquidate the amount in question .... ”). The court did not, however, make the precise finding required by the statute.
 

 We respectfully disagree with the district court’s dictum,
 
 Reiner v. Washington Plate Glass Co., supra
 
 note 2, at 551 n. 1, that Reiner has conceded this point. The bankruptcy court record shows that he made no such concession.
 
 See
 
 Plaintiff’s Memorandum of Law, Bankruptcy Court Record item 21, at 6-7.
 

 [8]
 

 .
 
 See also Jarroll Coal Co. v. Lewis,
 
 210 F.2d 578, 580 (4th Cir.1954);
 
 cf. In re Bay Ridge Inn, Inc.,
 
 98 F.2d 85, 87 (2d Cir.1938) (A.N. Hand, J.) (same for corporation insolvent when it gave security interest to secure payment of a dividend).
 
 But see In re National Tile & Terrazzo Co.,
 
 537 F.2d 329, 332 (9th Cir.1976).
 
 National Tile
 
 may not survive the 1977 recodifi-cation of the California Corporation Code.
 
 See
 
 Cal.Corp.Code § 166 (West 1977). Harold Marsh, the principal draftsman of the new California Corporation Code, believes that the decision should not survive and further believes that it misstated prior California law. 2 H. Marsh,
 
 California Corporation Law and Practice
 
 § 13-15, at 150-51 (1977).
 

 We do not decide whether a former stockholder can be paid before a creditor who extends credit knowing of a prior security interest and expecting to be subordinate to the repurchase obligation. While it is not clear to us how the creditor’s knowledge affects the corporation’s power to pay for repurchased shares, a few courts have permitted a former shareholder to recover ahead of creditors who had knowledge of the repurchase.
 
 See First Trust Co. v. Illinois Cent. R. Co.,
 
 256 F. 830, 831 (8th Cir.) (constructive knowledge; mortgage lien recited that the lien was given to secure payment for repurchased shares),
 
 cert. denied,
 
 249 U.S. 615, 39 S.Ct. 390, 63 L.Ed. 803 (1919);
 
 Tracy v. Perkins-Tracy Printing Co.,
 
 278 Minn. 159, 163, 153 N.W.2d 241, 244 (1967) (actual knowledge of the repurchase);
 
 Cross v. Beguelin,
 
 252 N.Y. 262, 169 N.E. 378 (1929) (same).
 
 But see
 
 Herwitz,
 
 Installment Repurchase of Stock: Surplus Limitations,
 
 79 Harv.L.Rev. 303, 316 (1965) (these cases have “an unfortunately circular character since ... it is entirely possible that a subsequent creditor with knowledge of the repurchase obligation will simply assume that his claim will have priority”) (footnote omitted).