**In re CENCO INCORPORATED SECURITIES LITIGATION.**

**SEIDMAN & SEIDMAN, Plaintiff,**

**v.**

**CENCO INCORPORATED, Defendant.**

**No. 75 C 2227, MDL Docket No. 291.**

United States District Court, N.D. Illinois, E.D.

Nov. 26, 1984.

---

Samuel Weisbard, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

David E. Springer, Kirkland & Ellis, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

#### Introduction

This suit is now a vestige of what was once a complex class action based on common law and federal securities fraud. Plaintiffs, security holders of Cenco, Inc. ("Cenco") brought this class action against several defendants, alleging what the Sev-

enth Circuit later termed "a massive fraud."[1] Most of the case has been resolved through various settlements between the plaintiff class and the individual defendants. Several of the various cross-claims between the defendants also have been settled or otherwise resolved. We are left now with the cross-claims between co-defendants Cenco and its former auditors, Seidman & Seidman ("Seidman").[2] Former District Judge John Powers Crowley tried these claims in 1980. On cross-appeals to the Seventh Circuit, the Court (1) affirmed Judge Crowley's judgment, entered on jury verdicts, against Cenco on its cross-claims against Seidman, (2) affirmed Judge Crowley's dismissal of Seidman's claims against Cenco under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"); and (3) remanded for possible retrial Seidman's common law counts against Cenco. Presently before the Court are several motions, the most significant of which are Cenco's motion to dismiss for lack of subject matter jurisdiction and motion for summary judgment. For the reasons stated below, we deny that part of Cenco's summary judgment motion which deals with interpreting the past decisions of this Court and the Court of Appeals in this case. However, because that holding pares this down to a purely state law case, and because considerations of judicial economy and comity no longer warrant our continuing exercise of federal jurisdiction, we dismiss Seidman's cross-claim without prejudice for lack of subject matter jurisdiction.

#### I. *Cenco's Summary Judgment Motion*[3]

The primary issue raised in Cenco's motion is whether Seidman waived its rights

1. *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 451 (7th Cir.1982).

2. On February 9, 1984, it was agreed that the remaining claims of the plaintiff class and Cenco against defendants Rose Packaging Co., David Marose and Russell Rabjohns would be held in abeyance and would be litigated only in the event it is established that these defendants become financially solvent. Thus, other than

the possibility of revitalizing these actions, only the Seidman-Cenco cross-claims remain in this litigation.

3. In deciding Cenco's motion for summary judgment, we have allowed Seidman's motion to strike Cenco's references to the SEC's Accounting Series Release No. 196 ("ASR No. 196"). ASR No. 196 is analogous to a consent decree, issued by the SEC as a product of a settlement

to recover from Cenco the $3.5 million settlement Seidman paid to the plaintiff class. Stripped for the moment of its legal trappings, Cenco's basic argument is that Seidman and Cenco's settlements with the plaintiff class forbade Seidman from recovering the $3.5 million, and that Seidman admitted this several times in open court. In response, Seidman admits that it promised to waive any claim against Cenco for contribution or indemnity, but notes that its present claim is based upon a related yet distinct tort of fraud. Seidman adds that the Seventh Circuit already held in this case that Seidman may recover its settlement payments from Cenco, and that this holding binds us under the doctrine of "the law of the case." To analyze these arguments, we must first summarize the nature of Seidman's cross-claim, ascertain the meaning of the settlements reached in 1980 and assess the import of the Seventh Circuit's holding.[4]

### A.

Seidman bases its cross-claim on a common law theory of fraud, which can be sketched as follows: Cenco engaged in a huge fraud against various third parties. It inflated the value of its inventories in order to bloat the value of its stock, obtain other companies cheaply and recover swollen insurance claims. Seidman, Cenco's auditors during the time of the fraud, had been deceived by Cenco's managers so that it could not pierce Cenco's fraudulent scheme. The class named Seidman as a co-defendant when it filed its suit. Eventually Seidman settled with the class for $3.5 million. It claims this settlement as an element of damages resulting from Cenco's fraud against it.

Having sketched Seidman's theory of recovery, we turn next to the relevant language of Cenco and Seidman's settlements with the class. Paragraph fourteen of Cenco's agreement provided:

> This Agreement affects the Certified Class's claims against Cenco and the co-defendants only in the following respect: the amount that the Certified Class recovers from Cenco, directly or indirectly, shall be limited to the amount specified in Paragraph 6 of this Agreement; therefore, any amount that the Certified Class recovers (by judgment, settlement or otherwise) from any co-defendant, including any new co-defendant added by plaintiffs in the consolidated class actions, shall be reduced (or eliminated) by any amount that such co-defendant recovers or becomes entitled to recover (by judgment, settlement, or otherwise) from Cenco through operation of principles of indemnification or contribution.

The key element in this agreement is its so-called "judgment reduction provision"; This provision capped Cenco's liability to the class by reason of its alleged fraud

with Seidman in which Seidman did not admit or deny any of its statements. Judge Crowley previously sustained Seidman's objection to its admission in evidence, ruling that it was a settlement within the meaning of Fed.R.Evid. 408, and, alternatively, that it did not fall within the hearsay exception of Fed.R.Evid. 803(8). We agree with Seidman that this ruling is the law of the case, but, in any event, we believe Judge Crowley was correct. Cenco has not persuaded us that it seeks admission of the settlement to prove facts other than those tending to show Seidman's possible liability to it or to the class. Thus, Cenco has not shown that the ASR falls outside the scope of Rule 408. *See, e.g., Central Soya Co. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 944–45 (7th Cir.1982) (court may admit settlements to prove facts other than liability). Moreover, the underlying "facts" Cenco seeks to prove are not based on formal findings by the SEC following a hearing on the record. The ASR recites only unproven allegations developed by the SEC's staff, plus some comments by the Commission. Accordingly, we grant Seidman's motion to strike Cenco's references to ASR No. 196. It is so ordered.

**4.** The parties agree that this Court has subject matter jurisdiction to rule on that part of the summary judgment motion which involves interpreting the settlements approved by former District Judge John Powers Crowley earlier in this case. They are correct. This Court retains jurisdiction to construe its orders and judgments approving the settlement agreements in issue. *Cf. Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798 (2d Cir.1960). Accordingly, we will return to the jurisdictional issue as it pertains to the rest of the case after disposing of the dispute over the settlements.

against the class. Any dollar that the class received from another defendant would be "taken away" for every dollar that defendant might recover from Cenco via indemnification or contribution.

Seidman's agreement with the class complemented this "judgment reduction provision." Paragraph 3(g) of that settlement says:

> By its settlement agreement with Cenco, dated January 12, 1978 (the "January 12, 1978 Agreement), the Class agreed, *inter alia,* that it would reduce the judgment or settlement recovered by the Class against Seidman by any amount that Seidman became entitled to recover from Cenco through operation of principles of indemnification or contribution on that judgment or settlement. Accordingly, by this Agreement Seidman agrees that it will not collect or recover any amount for contribution or indemnification against Cenco which arises out of the amount paid in this settlement by Seidman to the class, and that any such amount which Seidman becomes entitled to recover from Cenco shall be discharged of record. However, in the event that Seidman is ever found liable for contribution or indemnification in connection with the consolidated class actions, Seidman reserves its right to assert both the fact that Seidman has paid $3,500,000 to the Class and that Cenco and all the Individual Settling Defendants should be included in any formula for contribution or indemnification, for the purpose of determining the appropriate formula or amount of contribution which should be paid by or credited to Seidman. Seidman agrees to fully indemnify the Class and hold it harmless for the Class' obligations as to any claims by Seidman against Cenco, in the event and to the extent that it is ever determined that the Class is obligated to Cenco pursuant to the January 12, 1978 Agreement.

Thus, Seidman agreed that it would not try to recover from Cenco—via contribution or indemnity—any of the $3.5 million it paid to the class. Subsequently, Judge Crowley on May 11, 1980, issued an order confirming the relevant part of the above understandings:

> The Court hereby rules that no such claims for contribution of indemnification by either Cenco or Seidman against the other arising out of the settlement with the Plaintiff Class are legally permissible, and all such claims are hereby denied and dismissed.

It is clear from these agreements, and the parties agree, that Seidman agreed not to seek contribution or indemnification from Cenco for the $3.5 million Seidman paid to the class. What the parties heatedly debate is whether Seidman promised more than that, that is, whether Seidman promised to waive every right it might have against Cenco for the $3.5 million. To answer this question, we turn next to the Court of Appeals' decision.

At the trial on Seidman's cross-claims, Judge Crowley directed a verdict against the fraud claim for lack of proof of injury. The Seventh Circuit vacated this dismissal. It noted that Seidman had failed to present evidence of injury at trial not because it lacked evidence, but because the trial had been bifurcated: "Since [Judge Crowley] had, the day after trial began, tentatively approved the settlement under which Seidman agreed to pay $3.5 million to the class, Seidman naturally thought it had no need to present any evidence or injury at trial, and it did not." 686 F.2d at 457. The court went on to hold:

> The district judge should have taken judicial notice of the settlement and held that Seidman's obligation thereunder was evidence enough of injury to withstand a directed verdict of liability. Apparently he did not do so because he thought Seidman was just seeking indemnification from a codefendant, which this court has held is not allowed in a Rule 10b–5 case. *Heizer Corp. v. Ross, supra,* 601 F.2d [330] at 334–35 [ (7th Cir.1979) ]. But indemnity is a remedy of one wrongdoer against another; and Seidman's claim is that it was a victim rather than a wrongdoer. It is true that it paid several

millions to the class plaintiffs, but it never admitted wrongdoing or was adjudicated a wrongdoer. Therefore, if it can prove that Cenco defrauded it into issuing false audit reports which in turn exposed it to liability to the class plaintiffs, the amount it paid to settle with the class would be a permissible item of damages. 686 F.2d at 457–8. The parties hotly dispute the meaning of this holding and how it bears on Seidman's right to recover the $3.5 million settlement payment. They dispute first whether the Seventh Circuit actually took judicial notice of the settlement, and if not, whether this Court may properly do so. They also dispute whether the Court's holding that the settlement payment is recoverable is "the law of the case" such that we cannot now consider the language of the settlements or Seidman's statements in court about them. We take up each issue in turn.

### B.

■ Cenco has moved the Court for a hearing under Fed.R.Evid. 201(e)[5] on the propriety of our taking judicial notice of the settlement. It argues that judicial notice is improper because of the waiver it believes Seidman made, of which the Court of Appeals was ignorant. Seidman replies that the *Court of Appeals* took judicial notice of the settlement, and that Cenco failed to request a Rule 201(e) hearing from that Court; thus, concludes Seidman, Cenco's request for a hearing now is not "timely" under the Rule. *See Reiner v. Washington Plate Glass Co., Inc.,* 711 F.2d 414, 416 n. 5 (D.C.Cir.1983) (when appellate court judicially noticed a fact, a timely request for a hearing on propriety should be addressed to the appellate court in a petition for rehearing). We believe that the Seventh Circuit did not take judicial notice of the settlement, but rather instructed us to do so. We think the Court meant as follows: "The district court erred in not taking judicial notice. Thus, the directed verdict must be vacated. Accordingly, we remand with instructions to take judicial notice on retrial." This phrasing is more consistent with the Seventh Circuit's language than is Seidman's reading. The Court nowhere said *it* was taking judicial notice. Instead, it said the district court "should have" done so, and then vacated the dismissal and remanded. It should also be noted that the Court reached its judicial notice holding *sua sponte*: while Seidman argued that the settlement was evidence of injury, neither side presented arguments about judicial notice. In light of the above considerations, we think it best to construe the ambiguity in the holding in a way that allows Cenco to argue the issue. Thus, in accordance with the opinion above, we take judicial notice of the settlement, recognizing that Seidman's obligation under it is evidence of tortious injury. But we also allow Cenco's motion for a hearing under Fed.R.Evid. 201(e) for a hearing on the propriety of doing so.

We find no need, however, to hold a separate hearing on judicial notice. In briefing its summary judgment motion, Cenco argued at length that Seidman had waived its rights to recover the settlement payment. It thereby also argued implicitly that we should not take judicial notice. Our consideration below of its summary judgment motion amounts to a hearing on propriety. Thus, in denying Cenco's motion for summary judgment below, we also hold that taking judicial notice of the settlement as evidence of injury is proper.

### C.

■ Citing the above-quoted language from the settlement agreements and reproducing transcripts of extensive pretrial colloquies with Judge Crowley, Cenco argues that Seidman waived all of its rights to recover the $3.5 million from Cenco. We disagree. The settlement agreements, as well as the colloquies before Judge Crow-

---

**5.** Rule 201(e) provides:

> A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

ley, unequivocally show that Seidman waived only its rights to recover its settlement via contribution or indemnity. It did not waive any rights to recover the settlement as a damage arising from a separate tort of fraud perpetrated upon it by Cenco.

The written settlement agreements are clear on the point. They are couched in terms of "contribution" and "indemnity," and we need dwell on them no further. While the colloquies are not quite as clear, we do not agree with Cenco that the statements of Seidman's counsel reinforce Cenco's interpretation of the settlements. Cenco arrives at its interpretation by focusing only on selected portions of counsel's statements. Taken as a whole, counsel's statements were consistent with the written settlement agreements: Seidman agreed only to waive claims of contribution or indemnity. We need not clutter these pages with lengthy reproductions of the colloquies. We have examined them carefully and believe that Seidman did not orally waive its right to recover the settlement payment from Cenco on a separate fraud theory.[6]

### D.

We turn next to Cenco's remaining argument to avoid exposure for Seidman's settlement payments. It argues that there is no genuine issue of material fact that Cenco proximately caused Seidman to settle with the class. Thus, it claims, it is entitled to partial summary judgment under Fed.R.Civ.P. 56 with respect to that element of damage. We disagree.

To address Cenco's argument, we must again return to the language of the Seventh Circuit's holding that the settlement payments are recoverable: "[I]f [Seidman] can prove that Cenco defrauded it into issuing false audit reports which in turn exposed it to liability to the class plaintiffs, the amount it paid to settle with the class would be a permissible item of damages." 686 F.2d at 458. Seidman argues that the Seventh Circuit held that it can recover the settlement payments as damages, that this

holding is the law of the case, and that Cenco is thus barred from raising its proximate cause arguments. Cenco reasons that the Seventh Circuit's holding hinges on two contingencies which must be satisfied before Seidman may recover the settlement payments. First, Seidman must establish tortious acts, that is, "prove that Cenco defrauded it into issuing false audit reports." Second, Seidman must show causation, that is, prove that the fraud "in turn exposed" Seidman to liability to the class.

■■■ As Seidman argues, we undoubtedly must follow the holding of the Seventh Circuit and its enunciations of law. *See, e.g., Hayes v. Thompson,* 637 F.2d 483, 487 (7th Cir.1980). However, "[w]hile an appellate decision establishes the 'law of the case' for all subsequent stages of the litigation ... the trial court is restrained only with respect to those issues which have been considered and resolved by the appellate court." *Holcomb v. United States,* 622 F.2d 937, 940 (7th Cir.1980); *see also Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148, 59 L.Ed.2d 358 (1979). We agree with Cenco that the law of the case doctrine does not relieve Seidman from having to prove the tortious act and causation elements mentioned above. The language of the holding above is clear that Seidman had not yet established those elements. However, if Seidman does prove the two elements, its right to recover the settlement payments follows, and that is "the law of the case."

■■■ As for the first contingency—proof of the fraud—Cenco does not argue that the facts comprising the alleged fraud are not genuinely at issue. Thus, Cenco is not entitled to summary judgment on that score. *See, e.g., Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984) (movant bears burden of showing no genuine issue of material fact exists).

■■■ Moving to the second contingency, Cenco argues that Seidman's voluntary de-

---

**6.** In light of this holding, we need not address the arguments of Seidman that the Seventh Circuit's holding about the settlements constitutes "the law of the case."

cision to settle with the class, not Cenco's alleged fraud against it, proximately caused its injury. This argument misinterprets the meaning of proximate cause in this context. Obviously, Seidman's decision to settle was *a* factual cause of its damages, and its possible individual liability to the class probably in part motivated it to do so. The Court of Appeals' holding is clear that the mere fact that the settlement was voluntary does not itself preclude Seidman from recovering the payment. The real proximate cause issue is not whether Seidman voluntarily settled, but whether Cenco's fraud was a cause of Seidman's potential liability to the class. If so, Seidman's settlement payment follows from that exposure and can be recoverable both under the opinion of the Court of Appeals above and Illinois law. *See, e.g., Sorenson v. Fio Rito*, 90 Ill.App.3d 368, 371–76, 45 Ill.Dec. 714, 718–20, 413 N.E.2d 47, 51–53 (1980). *See also Seaboard Surety Co. v. Permacrete Construction Corp.*, 221 F.2d 366 (3d Cir.1955). Once again, Cenco in its motion does not sustain its burden of showing that there is no factual issue concerning whether the fraud caused Seidman's exposure. Accordingly, it is not entitled to summary judgment on the basis of proximate cause.[7]

## II. *The Motion to Dismiss*

■ The remaining issues in Cenco's motion for summary judgment, indeed the rest of the Cenco-Seidman dispute, involve questions of state law.[8] Recognizing this on appeal, the Seventh Circuit in a lengthy dictum considered *sua sponte* whether this Court has subject matter jurisdiction to hear Seidman's state law cross-claim

against Cenco. 686 F.2d at 458–59. Although leaving it for us to decide in the sound exercise of our discretion, the Seventh Circuit's opinion suggested that we may not wish to exercise pendent or ancillary jurisdiction over Seidman's cross-claim. Seidman's cross-claim was pendent to its federal RICO cross-claim against Cenco, which Judge Crowley dismissed, and ancillary to the federal claims of the plaintiffs against them in the original class action, which are now settled. The Seventh Circuit had this to say about the remaining pendent and ancillary claims:

The rule in pendent jurisdiction is that if the federal claim to which the state-law claim is pendent is dismissed before trial, the court will decline jurisdiction over the state-law claim and remit the claimant to the state courts. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The RICO claim, the only federal claim to which Seidman's common law counts could be pendent, was not dismissed before trial, so the rule just stated is not strictly applicable. On the other hand, since Seidman is seeking a new trial on those counts, the dismissal of the RICO claim which we affirm today is a dismissal of the main count before trial of the common law counts, more precisely before retrial of them. The position is the same if jurisdiction to decide Seidman's common law claim is based on the concept of ancillary rather than of pendent jurisdiction. Since the claims to which Seidman's claim are ancillary, namely the claims of the plaintiffs in the original class action, have all been finally disposed of there

---

7. Cenco's additional argument that Seidman's claim for its settlement payment contravenes "federal policy" lacks merit. Cenco relies on *Madigan, Inc. v. Goodman*, 498 F.2d 233 (7th Cir.1974) and *Heizer Corp. v. Ross*, 601 F.2d 330 (7th Cir.1979), in so arguing, but those cases involved recovery under theories of indemnity. As we have held above, and as the Court of Appeals noted, Seidman's claim is based on fraud, not contribution or indemnity, and thus is not controlled by *Madigan* or *Heizer*. Indeed, the Seventh Circuit explicitly distinguished *Heiz-*

er in holding that Seidman could recover the settlement payments. 686 F.2d at 457–58.

8. State law governs not only the theory of recovery, but also the scope of recoverable damages. Cenco's motion for summary judgment challenges Seidman's right to recover third party litigation expenses, attorney's fees, prejudgment interest and punitive damages, all of which will be determined under Illinois law. Because of our dismissal of the action, we do not reach those issues.

will be no federal question remaining in the case when Seidman's common law counts are retried; and pendent and ancillary jurisdiction are treated the same so far as the rules governing retention of the nonfederal claim after dismissal or other final disposition of the federal claim are concerned. *See Federman [v. Empire Fire & Marine Ins. Co.,* 597 F.2d 798 (2d Cir.1979) ] *supra.*

*Id.* The Court went on to note:

Since there must be a new trial from scratch in this case, since the litigation has now narrowed down to a dispute between two citizens of the same state over the application of state law to their dispute, since Seidman's claim against Cenco involves novel and difficult issues of state law, and finally since the judge who presided over the first trial has resigned from the bench, it may well be that the second trial should be in a state court. The district court will have to decide this on remand, balancing the considerations we have just listed against any judicial economies from retaining the matter in federal court, where it began.

*Id.* In sum, while we have the power to exercise ancillary jurisdiction over Seidman's cross-claim, we must now decide whether to exercise that power, taking guidance from the considerations listed by the Court above.

Judicial efficiency and economy, "the *raison[s] d'etre* of ancillary jurisdiction," *see Joiner v. Diamond M. Drilling Co.,* 677 F.2d 1035, 1042 (5th Cir.1982), stand foremost among the factors in our analysis. If retaining jurisdiction over Seidman's cross-claim no longer promotes judicial economy, we should dismiss the claim. *See U.M.W. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966);[9] *Joiner,* 677 F.2d at 1042. We must also be wary of deciding issues of state law now that the federal issues are resolved. "*Gibbs* teaches that federal courts must refrain from unnecessarily poaching on a sovereign

state's jurisprudential turf." *Joiner,* 677 F.2d at 1042. Despite these concerns of economy and comity, we should nevertheless retain jurisdiction if a dismissal would unduly prejudice the parties:

For example, if the ... statute of limitations has run during the pendency of the state claim in federal court, a dismissal might deprive the parties of any forum. In such a case, a federal court would be justified in retaining jurisdiction over the ancillary state-law claims. Similarly, if litigation over the ancillary claim has proceeded apace and the parties have already prepared their case in reliance upon the availability of a federal forum, dismissal might not be required.

*Joiner,* 677 F.2d at 1043 (emphasis in original) (footnotes and citations omitted). With these additional considerations in mind, we turn to Cenco's motion to dismiss.

Several facts point strongly to dismissal. First, a new trial will be necessary, and this Court did not preside over the first trial. Had we done so, judicial economy would clearly demand that we retain jurisdiction. But now any savings of judicial time would be marginal. Second, as Judge Posner observed, the new trial involves unresolved issues of state law. In the absence of related federal issues, we hesitate to decide these issues in the first instance. Finally, we must take note of the unpleasant possibility of a reversal on appeal. If we were to try this case and be reversed on appeal because the Seventh Circuit does not concur with our exercise of discretion to try the case, the parties would have to go through the enormous time and expense of a *third* trial, with possible appeals on the merits. *See Joiner, supra; Rosario v. American Export-Isbrandsten Lines, Inc.,* 531 F.2d 1227, 1233 n. 17 (3d Cir.1976) (dicta). This last consideration obviously dovetails with the concerns of judicial economy noted above.

Seidman points to several countervailing considerations in arguing that a dismissal

---

**9.** While *Gibbs* dealt with the standards for retaining jurisdiction over pendent state claims after the federal claims are resolved, the case applies as well to ancillary state claims. *Cenco,* 686 F.2d at 458; *Joiner,* 677 F.2d at 1042 n. 16.

would be improvident. It suggests that depositions taken for the case in federal court may not be usable in a state court trial; that a trial in state court would be delayed longer than a trial in this Court; that the liberalized hearsay rule under the Federal Rules of Evidence which would permit extensive use of trial transcript testimony at trial is not available in state court; that Seidman may lose $75,000 in court costs, since dismissal of the instant case by this Court would demonstrate that Seidman was not the prevailing party in this litigation; and finally, that dismissal of this case would require a state court to construe judgments, orders and decisions of the federal courts. In effect, Seidman is arguing that a remand to state court would prejudice it within the meaning defined in *Joiner*.

These considerations are not as weighty as they might appear at first glance. Cenco has offered to stipulate that testimony from depositions and the trial transcript could be used in the state court to the same extent they could be used in federal court. Had Cenco not done this, the cost and delay of retaking depositions might have demanded our retention of jurisdiction. But the stipulation will minimize, if not eliminate, variances between state and federal procedure which might have prejudiced Seidman. As for the issue of delay, there is no guarantee that this case would be tried sooner in federal court; moreover, given the stated views of Judge Posner in the prior Seventh Circuit opinion, there is always the possibility of reversal on the jurisdictional issue, which would wipe out any savings from an earlier trial in federal court. Moving to another Seidman concern, we note that in light of our disposition, no federal judgments, orders or decisions linger for the state court to construe. We have, we hope, laid to rest the dispute over the meaning of the settlements and of the opinion of the Seventh Circuit.

Finally, as for the $75,000 in court costs, the Court of Appeals vacated Judge Crowley's order awarding those costs to Seidman. In the Seventh Circuit's view, neither party has yet "prevailed," and so neither deserved costs. Moreover, the Court explicitly stated that Seidman would not be entitled to costs "if the court below should decide not to exercise jurisdiction over Seidman's state law claims." 686 F.2d at 459. Thus, the Court of Appeals implicitly recognized that the analysis of the jurisdictional issue should be separate from the costs issue. But even if costs should be considered in deciding the jurisdictional issue, Seidman is clearly not entitled to costs now, and its potential for recovering costs does not outweigh the economy and comity factors discussed above.[10] In sum, then, those concerns of economy and comity compel us to grant Cenco's motion to dismiss Seidman's ancillary state law cross-claim for lack of subject matter jurisdiction.[11]

### III. *Conclusion*

To summarize our principal holdings above: (1) We take judicial notice that Seidman's settlement payment is evidence of injury; (2) We allow Cenco's motion for a hearing on whether taking judicial notice is proper, but hold that taking judicial notice is proper; (3) Seidman did not waive all rights to recover from Cenco its $3.5 million settlement payment to the class; (4) Cenco has not established that its alleged fraud did not proximately cause Seidman's injury; (5) Thus, Cenco's motion for summary judgment is denied; (6) Seidman's state law cross-claim is dismissed for lack of subject matter jurisdiction. It is so ordered.

---

10. This conclusion does not prejudice Seidman. It was concerned that if it lost in state court and Cenco petitioned for costs, Seidman would lose "credit" for the $75,000 previously awarded. However, Cenco has agreed to waive the first $75,000 in costs should it prevail in state court. Thus, prejudice to Seidman is neutralized.

11. Thus, the only matters in this litigation now remaining before this Court are the claims of the plaintiff class and Cenco against defendants Rose Packaging Co., Marose and Rabjohns. See footnote 2, *supra*. A status as to these remaining claims is set for November 1, 1985, at 10:00 a.m.