In re CENCO INCORPORATED SECURITIES LITIGATION.

SEIDMAN & SEIDMAN, Plaintiff,

v.

CENCO INCORPORATED, Defendant.

MDL No. 291.
No. 75 C 2227.

United States District Court,
N.D. Illinois, E.D.

July 10, 1986.

Samuel Weisbard, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

David E. Springer, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

ASPEN, District Judge:

In our November 26, 1984 opinion in this case, we denied Cenco's motion for summary judgment and dismissed Seidman's cross-claim for lack of subject matter jurisdiction. 601 F.Supp. 336 (N.D.Ill.1984). In so doing we thought we had "laid to rest the dispute over the meaning of the settlements and of the opinion of the Seventh Circuit [686 F.2d 449 (1982) ]." 601 F.Supp. at 344. Despite our expression of hopes for finality, and of the *dismissal* of the cross-claim, Cenco "requests the Court to revisit an issue once considered," Memorandum in Support of Cenco's Motion for Summary Judgment at 1, sparking several months and bouts of briefing. Cenco did not begin this new round of briefing until six months after we ruled against it on summary judgment and dismissed Seidman's case. The time has come to *end* this aspect of the case, and let Cenco decide whether to live with our November 26 opin-

ion or appeal it. For the brief reasons spelled out below, the Court denies Cenco's renewed motion for summary judgment, as well as its satellite motions, and enters judgment under Rule 54(d) dismissing Seidman's cross-claim for lack of jurisdiction.[1]

At the outset, we must determine whether it is possible for Cenco to move for summary judgment on a claim against it that had been dismissed for lack of subject matter jurisdiction six months earlier. The answer lies in the fact that the dismissed claim was merely a cross-claim of the larger case. Although we dismissed the claim, regrettably a final, appealable judgment was never entered on that claim under Fed. R.Civ.P. 54(b). Because such was not done, "the order [of dismissal] is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all of the parties." Rule 54(b). Because no such judgment resolving *all* rights and liabilities has been entered, Cenco had the right to come in and seek revision of the November 26, 1984 order even six months later, without having to present its motion under the terms of Rule 60. Remarkably, however, Cenco has *not* expressly asked the court to vacate the dismissal order. It merely moves for summary judgment again on a *dismissed* claim, and spends most of its time arguing as if we had not decided the summary judgment issue and then dismissed the claim. However, we will not hang Cenco on the technicality that it did not formally move to vacate the dismissal order; rather, we will construe its motion for summary judgment as a motion to vacate the dismissal order as well. In denying the former motion below, we deny the latter one also.

We need not repeat the pertinent facts, which can be found in our earlier opinion. *See* 601 F.Supp. at 337–40. Cenco spends most of its pages simply rehashing its arguments that we rejected in that opinion. It feels that Seidman's settlement with the class bars Seidman from seeking as an element of tort damages from Cenco the $3.5 million Seidman paid the class. We disagreed with Cenco before, *see id.* at 340–41, and still do. To the extent Cenco merely echoes its earlier, rejected position, our holdings are the law of the case and Cenco has not persuaded us we were wrong. Instead of waiting six months to arouse the Court's sense of deja vu, Cenco might have better spent its time and client's money asking the court for a Rule 54(b) judgment so it would appeal and present its arguments to a court which had not exhaustively considered them before.

We will confine our present inquiry to the allegedly "new" evidence Cenco has brought to our attention. Most significant are the affidavits of Lowell Sachnoff and Fay Clayton regarding the parties' intent when they signed the settlement agreements. Before discussing these papers, we observe that Seidman is correct that this evidence is not "new" in the sense that it could not have been submitted before. It is "new" only in that it is newly presented to the Court. Cenco could have—and should have—discovered and introduced these papers earlier. Lowell Sachnoff is surely not a new face to Cenco's counsel, and they could have tapped his remembrances the first time we considered its summary judgment motion. It wastes everybody's time and the clients' money to bring a summary judgment motion *twice*, relying the second time on evidence that could have been presented sooner. Nevertheless, we disagree with Seidman that Cenco has somehow waived the opportunity to present this evidence. Where a party fails to introduce evidence *at trial* or on a motion for summary judgment that is *granted* in the other party's favor, the party generally cannot introduce the evidence, unless Rule 60(b) is somehow satisfied. *See, e.g., Marine Bank v. Falcone,* No. 84 C 8661 (N.D.Ill. April 30, 1986) (Aspen, J.). But Cenco is correct that where a

---

1. Cenco's request for oral argument is denied. The record provides a more than adequate basis for a ruling, and Cenco has had a full chance to say what it has to say and has said it more than once.

summary judgment motion is *denied*, such that no final judgment has been entered, the movant may renew its motion based on additional evidence, even where the evidence could have been introduced sooner. *See, e.g., Kirby v. P.R. Mallory & Co., Inc.*, 489 F.2d 904, 913 (7th Cir.1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974). We should, therefore, confront the affidavits to see if they warrant disturbing our earlier ruling.

■ We do not doubt that the Clayton affidavit was made by her in good faith, but it is of little to no significance in resolving the issues before us. In paragraph 4 it adds but two "new" facts to the dispute. First, it asserts (and Seidman disputes) that Seidman's counsel never said to her that it was retaining the right to pursue the settlement payment as tort damages rather than as indemnification. Second, it avers that she would have remembered such a statement because she believed that the Class-Cenco settlement precluded *any* effort by Seidman to recoup the $3.5 million. We agree with Seidman that this second "fact" must be stricken as a legal argument or conclusion. Ms. Clayton's "interpretation" is not relevant here. The first statement, even if relevant, does not suffice to disturb our conclusions and analysis in our November 26, 1984 opinion. Turning Ms. Clayton's statement around, we also see that nowhere does she say that Seidman said it was waiving the right at issue. This type of negative evidence bears little, if at all, on the case.

The second Sachnoff affidavit,[2] although also authored in good faith, is of little probative value. Disregarding the speculative statements as to Cenco's intent and Cenco's views, nothing in the affidavit dissuades us from our conclusions in our 1984

opinion. Cenco concedes Sachnoff and Clayton's views are parol evidence and can be considered only if the agreements are ambiguous. Specifically, they are admissible only if the central phrase of the settlement agreements, "principles of contribution or indemnification," is ambiguous. Reading these words in the context of the agreements, we do not think these words can reasonably be construed to preclude Seidman from seeking the settlement payments as *damages* for Cenco's alleged fraud on *Seidman*. This can be seen first by comparing ¶ 3(g) with ¶ 3(e) of the class-Seidman agreement. While Seidman used the language of contribution or indemnity in ¶ 3(g) with respect to Seidman, it did not use such limiting language with respect to releasing its claims against other defendants. When lawyers intend to release liability for *all* claims they know how to and usually say it in clear language, as the parties did in paragraph 3(e). The difference in ¶ 3(g) illustrates that indemnification is not as broad a concept as Cenco now claims.

■ Contrary to Cenco's repeated arguments, there is a plain and common legal distinction between recovery via indemnification and via damages for a tort. We must remember that these agreements were written by lawyers, drawing many of their meanings not from the broadest definition to be found in Webster's but from legal parlance. In the law, "recovery under principles of contribution or indemnity" is, quite simply, a different animal from "recovery under principles of direct tort liability." Waiver of the first is not necessarily waiver of the second. Indemnity generally, though not always, arises between two tortfeasors,[3] and usually exists if a contractual or other relationship between the two warrants shifting one tort-

---

**2.** The second affidavit is essentially an edited version of an earlier one. We have looked only to this one, since the first one is essentially subsumed in it. Thus, we disregard Seidman's motion to strike the first affidavit.

**3.** Of course, it also often arises by contract, as when an insurer agrees to indemnify a party for

a loss. In that sense, Judge Posner was wrong to suggest that "indemnity is a remedy of one wrongdoer against another." *Cenco*, 686 F.2d at 457. It is usually that, but insurers are often bound by contract to indemnify someone even though they are not wrongdoers.

feasor's entire liability to another tort-feasor. *See generally* Restatement (Second) of Torts, § 886B (1979); *Prosser and Keeton on the Law of Torts* (1984), § 51 at 341–45. Recovery by indemnity between two defendants who have allegedly committed a tort on a third person is not the same thing as recovering because one defendant *also committed a tort on the other:*

> The unexpressed premise has been that indemnity should be granted in any factual situation in which, as between the parties themselves, it is just and fair that the indemnitor should bear the total responsibility, rather than to leave it on the indemnitee or to divide it proportionately between the parties by contribution. It is sometimes said that a right to indemnity arises when the indemnitor owns an independent duty to the indemnitee. This may prove to be nothing more than a way of stating the problem (when is the duty owed?), but it happens to be true in some of the instances stated in Subsection (2), in which the *indemnitee would have an action of tort against the indemnitor, irrespective of a right of indemnity.* If a manufacturer supplies a defective product to a retailer, who sells it to a customer, who recovers from the retailer for an injury incurred, *the retailer may recover in indemnity against the manufacturer or he may maintain an action in negligence or for strict products liability. There are different implications to the two types of action.*

Restatement (Second) of Torts, § 886B, comment c (1979). Indemnity shifts *responsibility to a third person* from one person to another, and arises "in cases where equities supported it." Prosser & Keeton at 344. The gist of Seidman's

fraud claim is not that it is more equitable that Cenco pay for Seidman's loss to the class, but that Cenco has committed a tort on Seidman, and must pay damages for this, damages which happen to encompass the settlement payment. That this element of damage *overlaps* what Seidman maybe could have recovered through indemnity does not *make it* indemnity.

Having drawn this legal distinction between indemnity and tort damages, a distinction which, by the way, Cenco recognized in its briefs to the Court of Appeals and which that Court recognized, *see* 686 F.2d at 457–58, we return to the settlement agreements. As we held in our earlier opinion, the language of those settlements is consistently couched not broadly, but in terms of contribution and indemnity. *See* 601 F.Supp. at 341. Given the legal context, and the fact that the waiver is described only in those well-established legal terms, we adhere to our conclusion that the settlement language is plain and cannot reasonably be read to amount to a broad waiver of Seidman's right to recover the $3.5 million as tort *damages.*[4] Accordingly, Mr. Sachnoff's comments on the agreements are parol evidence and not admissible to explain or vary the plain meaning of the agreements, even if we disregard the flaws in the affidavit.[5]

The only other new matter Cenco raises is a claim that Messrs. Weisbard and Sachnoff committed an ethical violation in connection with the May 11, 1980 order signed by Judge Crowley. *See* 601 F.Supp. at 339 (quoting the order). It appears from the affidavits of the parties and Mr. Sachnoff[6] that Sachnoff initiated and drafted the language of this order, that Seidman's law firm typed the draft order because of a secretarial problem at Sachnoff's firm, and

---

4. Obviously, we are not holding that Seidman is entitled to these damages. It must prove the fraud and causation. We merely hold that the settlements do not preclude Seidman from seeking those payments if it can prove the rest of its case.

5. In any event, we observe that nowhere does Sachnoff say that Seidman's counsel indicated to him that Seidman intended to waive *any*

claim it might have to the $3.5 million. Sachnoff merely emphasizes that the parties intended to give "contribution and indemnification" their "normal" meanings. We have done just that.

6. There are two affidavits by Mr. Sachnoff, *other* than the two noted above, regarding the May 11, 1980 order. Neither party challenges the affidavits.

that Sachnoff presented the order to Judge Crowley at his home for his signature, all without prior notice to Cenco.[7] Cenco does not accuse Sachnoff or Seidman of bad faith,[8] but does say that the conduct violated Disciplinary Rule 7–110(b) of the Illinois Code of Professional Responsibility, regarding *ex parte* communication. Cenco argues that as "drafter" of the May 11, 1980 order, Seidman should not be allowed to rely on its language now and it should be strictly construed against Seidman.

We think Cenco has created a tempest in a teapot. First of all, it is clear that Sachnoff, not Weisbard, drafted the language regarding contribution and indemnity, and it is a distortion of the record to suggest otherwise. There is thus little reason to construe it narrowly against Seidman, even if such a construction could be reasonable, which we doubt for reasons expressed above. Second, if Cenco sincerely believes an ethical violation occurred, it is free to report the matter to the relevant state diciplinary authority. For our part, we think the lack of notice was a harmless oversight, resulting from the pre-trial frenzy and confusion but not from any conspiracy. Cenco has not shown that it would have objected then to the language of the order, and we do not think it would have. The language is simple and entirely consistent with the language of the settlement agreements, and we cannot see how or what Cenco would have said *then* in objection. Indeed, *Cenco did not object to the order when it came out.* True, it claims it thought then that Judge Crowley had drafted it, but Cenco has shown no shyness about objecting to a judge's language or asking for reconsideration when it thinks

that language will hurt it. The fact of the matter is that Cenco just would not have objected to the order had it gotten notice. This is not to excuse the lack of notice, but we do not see any real harm to Cenco resulting from it, and neither do we see the evil undertones that Cenco imagines. What happened here is nothing like the shenanigans of *In re Wisconsin Steel,* 48 B.R. 753 (N.D.Ill.1985) (Grady, J.), which Cenco relies upon. In any event, we see no reason to rewrite totally Judge Crowley's order 6 years later to Cenco's liking, when it would not have asked and did not ask for such a revision earlier.

For the foregoing reasons, Cenco's renewed motion for summary judgment is denied.[9] We continue to hold that we lack ancillary jurisdiction over this aspect of the case, and therefore will not vacate our order of dismissal. This time, however, finding that there is no just reason for delay, we will instruct our clerk to enter a judgment under Rule 54(b), dismissing Seidman's claim against Cenco without prejudice for lack of subject matter jurisdiction. It is so ordered.

---

**7.** Cenco wants the court to take judicial notice of these facts. Its motion is frivolous. These are plainly not facts to judicially notice under Fed.R.Evid. 201. However, the facts we have listed do appear uncontroverted, so we take them as true. We should not leave unmentioned the clever detective work which uncovered these facts. Acting like a modern Sherlock Holmes and Dr. Watson, two of Cenco's lawyers compared the typeface of Judge Crowley's order with that of some Seidman pleadings and discovered the similarity.

**8.** These events occurred over a weekend just before trial was to begin. No doubt the pace was hectic and the parties were swamped with work. Notice to Cenco apparently was mistakenly overlooked.

**9.** We also deny Seidman's request for Rule 11 sanctions, although we note that some of Cenco's positions, such as its request for judicial notice, came close to violating Rule 11. The Springer affidavit also contains much improper legal argument and speculation, which we simply disregarded in our consideration of it.